[Civ. No. 24634. Second Dist., Div. Two. Dec. 21, 1960.]

MASAKO GOTO, Respondent, v. JAMES GOTO, Appellant.

William H. Neblet and Raymond R. Farrell for Appellant.

Hahn, Ross & Saunders for Respondent.

FOX, P. J.—This is another chapter growing out of the controversy[1] of these parties over the custody of their two minor children, Denise and Hans. In this particular appeal the defendant is attacking an allowance to his former wife for attorney's fees and court costs to resist his appeal from an order granting her custody of their son and in representing her in a supersedeas proceeding which he initiated to stay the custody order.

The parties were married in February 1942. They separated in November 1953. Plaintiff wife filed suit for divorce and an interlocutory decree was granted her in April 1955. The decree granted her custody of their children; it also contained a provision for their support. The final decree, entered in April 1956, incorporated the provisions of the interlocutory decree relative to the support and custody of the children. In August 1957, the court made an order changing the custody of the two children from the mother to the father and terminated the support provision of the interlocutory and final decrees. (See *Goto* v. *Goto*, 52 Cal.2d 118 [338 P.2d 450].)

On July 14, 1959, the court made an order changing the custody of Hans from his father to his mother. The defendant father appealed from this order. The defendant also applied to the superior court for a stay of execution of the order, which was denied. He then applied to the District Court of Appeal for a writ of supersedeas. An order to show cause was granted. After hearing, the petition for the writ was denied. (See *Goto*

---

[1] See *Goto* v. *Goto*, 52 Cal.2d 118 [338 P.2d 450]; *Id.* 174 Cal.App.2d 460 [344 P.2d 808]; 182 Cal.App.2d 247 [5 Cal.Rptr. 753].

v. *Goto*, 174 Cal.App.2d 460 [344 P.2d 808]. Hear. den.) The order changing the custody of Hans to his mother was affirmed (see *Goto* v. *Goto*, 182 Cal.App.2d 247 [5 Cal.Rptr. 753]) and hearing was denied by the Supreme Court.

Plaintiff made a motion (1) for counsel fees and costs *re* defendant's appeal from the order of July 14, 1959, granting her custody of Hans; and (2) for attorney's fees in resisting defendant's application for supersedeas. On November 13, the court awarded plaintiff $2,000 as attorney's fees for representing her in these matters and $300 court costs. The instant appeal is from this order.

In seeking a reversal defendant contends (1) that the court abused its discretion in awarding plaintiff attorney's fees and costs; and (2) that the court committed prejudicial error in admitting in evidence copies of defendant's 1958 state and federal income-tax returns. We do not find either of these contentions well founded.

In a proceeding of this character it is incumbent upon the plaintiff to establish her necessitous circumstances and the defendant's financial ability to respond. A determination of who should pay costs and attorney's fees in a domestic relations matter rests largely in the sound discretion of the trial court and its judgment will not be disturbed on appeal unless there is a clear showing of an abuse of such discretion. (*Primm* v. *Primm*, 46 Cal.2d 690, 696 [299 P.2d 231].) We must therefore examine the financial positions of the respective parties.

Plaintiff, who has remarried, testified at the hearing in this proceeding that she is a doctor employed by the Army, at Fort Ord Hospital, Fort Ord, California; that the annual salary for her position on a full-time basis is approximately $8,600 but that she only works half days, except when there is a shortage of help; that her take home pay is $319 per month after withholding for federal income tax, retirement and insurance. Plaintiff testified that she receives $800 a year dividends[2] on stock[3] she has in a corporation owned by her family; that she has a personal savings account, built up entirely from her own earnings, of from $2,000 to $3,000, which account she has had since childhood and which she uses as a "reserve" to meet whatever need may arise; and that she has been compelled to draw upon this account to meet tax payments. She further testified that she kept her earnings in a

[2]She turned this dividend back to the corporation in 1958.
[3]No value was established for this stock.

separate checking account which then showed a balance of $124, and did not commingle her income with her present husband's funds; that although her husband made the monthly payments on the house they were buying, she bought the food which she estimated at $50 a month and they shared, on substantially an equal basis, the utility bills, maintenance of the house, and the taxes. She paid her "own expenses, too." Plaintiff gave no figures for any of these items. She did state, however, that her health and life insurance (which apparently was not included in deductions withheld from her salary) amounted to $45 and $50, respectively, per quarter. Also, that she owed her former counsel in this case a balance of $1,000 which she is trying to pay off in monthly installments.[4] Finally, that she had paid her present counsel nothing for their services in successfully opposing defendant's appeal from the order of July 14, 1959, or for their successful opposition on her behalf to defendant's petition for writ of supersedeas.

Defendant is a practicing physician in Los Angeles. His financial position is revealed by the testimony of an auditor who had examined the defendant's books. They disclose that for the first seven months of 1959 the doctor's gross income from his profession was $56,099.58; his operating expenses were $38,444.47, which included depreciation of $1,560.90. He had some $6,800 in the bank on July 31, 1959. When this audit was extended to September 30 — a period of nine months — it showed the doctor's gross professional income to be $74,100.51 and his expenses to be $48,245.03. This left a profit of nearly $26,000 for the nine-month period or approximately $2,870 per month. The accountant also testified that the doctor's books and records (exclusive of his income-tax return which will be discussed later) showed his 1958 gross professional income to be $99,815.76. The accountant was not able to state from the books and records what the doctor's professional expenses were for 1958, and therefore could not give his net income for that year.

From the foregoing résumé of the evidence the trial court could reasonably infer that all of plaintiff's take home pay and income was required to meet her living and other legitimate expenses. She does not appear to have been able from these sources to liquidate her indebtedness to her former attorneys, and she is still making monthly payments thereon.

[4]Plaintiff was not allowed costs and attorney's fees on her first appeal. (See 52 Cal.2d 118, 123-124 [338 P.2d 450].)

Plaintiff's need for counsel fees and court costs is therefore sufficiently established unless it can be said that she must first exhaust a substantial portion of her separate estate. Application of such a principle in the instant matter would mean that plaintiff would be compelled to spend practically all of her reserve savings account before she could call upon her former husband for any financial assistance. Such a result does not represent the current philosophy of the law in this field. ■ "[T]he law does not require a wife to have recourse to her own resources first, to the impairment of the capital of her own separate estate." (*Westphal* v. *Westphal,* 122 Cal.App. 388, 390 [10 P.2d 122]; *Fallon* v. *Fallon,* 86 Cal. App.2d 872, 875 [195 P.2d 878]; *Cameron* v. *Cameron,* 85 Cal.App.2d 22, 29 [192 P.2d 89].) In *Heck* v. *Heck,* 63 Cal. App.2d 470 [147 P.2d 110], the court allowed attorney's fees to the wife of a husband who had an estate of some $200,000 even though the evidence disclosed that she had a separate estate of approximately $10,000 from which she derived some income. It therefore cannot be said, as a matter of law, that plaintiff did not make a sufficient showing of need for funds to employ counsel to represent her in the two matters in question before the reviewing courts.

■ It requires no extended discussion to establish defendant's financial ability to provide plaintiff with funds for attorney's fees and court costs. His gross annual income of nearly $100,000 and a net of approximately $2,870 per month adequately demonstrate his fin icial ability to respond to the challenged order.

There does not appear to be any rious question relative to the amount of the fees awarded. In any event the record establishes that the fees were reasonable.

It is clear that the court did not abuse its discretion in allowing plaintiff $2,000 in fees and $300 in costs.

In his brief defendant calls our attention to testimony given by plaintiff at a later time in another proceeding which shows that in 1959 her earnings were greater than her testimony indicated in the instant proceeding. He argues that her testimony in this later proceeding shows that she was not in necessitous circumstances and therefore the court should not have granted her motion for attorney's fees and costs. The testimony in the instant proceeding was concluded on November 12, 1959, and the decision rendered the next day. Defendant filed notice of appeal from the order on November 25, 1959. The subsequent proceeding in which plaintiff gave

testimony more favorable to defendant's position was not initiated until December 23, 1959, and the testimony in question was given at a hearing on February 10, 1960. Obviously the later testimony could not have been before the court in the hearing on November 12, 1959, and is not in the record on this appeal. The law is clear that a reviewing court cannot properly consider matters that are not disclosed by the record. The fact that the material is contained in the briefs does not aid the appellant's cause. (*Firemen's Ins. Co.* v. *Indermill,* 182 Cal.App.2d 339, 342 [6 Cal.Rptr. 469].) The statement of the court in *Bertz* v. *Turner,* 102 Cal. 672, at page 674 [36 P. 1014], is here apposite: "Appellant says he has another appeal pending here, and that this court will take judicial notice of its own records. For some purposes the court will do so, but an appellant cannot in that way, nor could he by uniting the two appeals, have his cause heard on evidence not produced at the hearing below."

 At the outset of the hearing in this matter the trial court, at the request of counsel for plaintiff, required defendant, over the objection of his counsel, to produce copies of his 1958 income-tax returns. These documents were then received in evidence notwithstanding the objection of defendant's counsel that they were privileged within the meaning of sections 19282 and 19283 of the Revenue and Taxation Code of this state and were not admissible in evidence in view of the decision in *Webb* v. *Standard Oil Co.,* 49 Cal.2d 509 [319 P.2d 621]. Under the decision in the Webb case, the court was in error in requiring the production of the copies of these tax returns and in receiving same in evidence over his appropriate objection. However, it does not appear that this error was prejudicial because at the adjourned hearing on November 12, 1959, Mr. Cowen, who was defendant's accountant, testified from defendant's books and records, without reference to his 1958 income-tax returns, to defendant's professional income, as set out above, for 1958.[5] Furthermore, it is clear that the court did not rely on the income-tax returns. During the accountant's testimony counsel for defendant commented that "The tax returns were introduced over my objection." The

[5]The Reporter's Transcript on this point reveals the following:
"Q. BY MR. SAUNDERS: From the books and records, and exclusive of the tax return, the book shows for the year 1958 the gross income to be $99,815.76, is that correct? A. That is correct, on the general ledger income account for December 31, 1958.
"Q. That is from the books and records? A. That's correct.
"Q. Not from the income tax return? A. That's correct."

court thereupon stated: "We are not using the tax returns. We are using books and records." Defendant's professional income and expenses for the two periods in 1959 (i.e., (1) Jan. 1 to July 31, and (2) Jan. 1 to Sept. 30) were taken from his books and records. No income-tax return was or could be involved in these figures. It is therefore apparent that there was ample competent evidence before the trial court without any reference to defendant's income-tax returns for 1958 to adequately disclose defendant's professional income and to amply justify the implied finding of defendant's ability to pay. Defendant clearly suffered no prejudice by the court's erroneous ruling.

The order is affirmed.

Ashburn, J., and Herndon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 15, 1961. Schauer, J., and Peters, J., were of the opinion that the petition should be granted.