[Civ. No. 41759. Second Dist., Div. Three. Feb. 28, 1974.]

In re the Marriage of SOPHIA and SAMUEL BORSON.
SOPHIA BORSON, Respondent, v.
SAMUEL BORSON, Appellant.

COUNSEL

John W. Fay for Appellant.

Ted Sullivan, James E. Sutherland, Block, Bullock & Scully, Samuel P. Block and Morris Singer for Respondent.

## OPINION

**COBEY, Acting P. J.**—Samuel Borson appeals from a judgment ordering him to pay in a marital dissolution proceeding, pursuant to Civil Code sections 4370 and 4371, Block, Bulloch & Scully and Morris Singer, the former attorneys of his former wife, Sophia Borson, additional fees in the sum of $7,500 and additional litigation expenses in the sum of $1,027.40 together with interest.

Appellant asks us to reverse this judgment on the grounds generally that it is in excess of the trial court's jurisdiction and is both improper and excessive. We find no error and affirm.

### FACTS

On August 26, 1970, Sophia Borson filed a petition to dissolve her marriage to appellant. The Borsons had then been separated about 13½ years, during which time Sophia had been living in the family residence in Whittier and receiving from appellant $25 a week. Following the separation appellant went into business for himself. He incorporated a business (Huron Gage Mfg., Inc.) in 1962 and subsequently set up another incorporated business at the same address (Huron Engineering Co.) under the ostensible ownership of a brother and an employee to do the machine shop work incident to his corporations' manufacture of gauges.

In his response to Sophia's petition appellant alleged in effect that there was no community property of the parties and in the protracted and extensive discovery proceedings undertaken by Sophia's aforementioned former attorneys he claimed that his business had been started with monies given him by his late father and another brother, that in any event he had made an oral property settlement agreement with Sophia at the time of the separation giving her only what she then took—namely, the family residence, furnishings and personal effects, and support of $25 a week and that one-half of the stock of his corporation belonged to a key employee under an agreement made with that employee.

Sophia, in her petition to dissolve her marriage with appellant, which she personally verified, asked that she be awarded support and attorneys' fees and costs. Furthermore, in her declaration in support of an accompanying order to show cause filed at the same time, she averred that she did not have sufficient funds to support herself or to pay attorneys' fees and costs in the proceeding and that appellant had ample funds for the same.

On November 30, 1970, by oral stipulation in open court, the parties stipulated, among other things, that appellant would pay Sophia $60 a week commencing December 1, 1970, and that appellant would pay directly to Sophia's aforementioned attorneys $2,500 in fees and $750 in costs. In its order filed on January 27, 1971, based upon this stipulation, the trial court expressly reserved "the right to further order of the Court to fix any additional fees or costs."[1]

Sophia's counsel then undertook extensive discovery to determine whether there was any community property of the parties. They took the deposition of appellant four separate times and that of his accountant twice. They also took the depositions of the aforementioned key employee, the woman who had worked for and lived with appellant, and appellant's brother who was in business with him. They then had these other persons (except for the accountant) joined as parties respondent. They made a detailed analytical examination of appellant's business records, the income tax returns of himself and the corporations, his numerous individual stock transactions, and

---

[1]This order further provided that the court would have the right to review this award of fees and to "determine the proper and reasonable sums due [respondent's] counsel for services rendered to date and in the future." The order further provides: "The allowance provided for herein is for the purpose of assuring [respondent] of an opportunity to properly present her case and is not a final determination of counsel fees in any way, either for services rendered to date or in the future. [Respondent's] attorneys shall file and serve an accounting in respect to said costs, and for attorneys' fees."

his joint bank accounts with his children and another. From this discovery they concluded that appellant's assets were community property, that this property was worth about $200,000 and perhaps over the years appellant had misappropriated an additional $50,000 in community property through so-called loans, discount and interest payments to employees.[2]

On November 30, 1971, Sophia's attorneys' discovery was nearing completion, but in view of the numerous irregularities and inconsistencies they had uncovered, they did not think they should stop their discovery while it was incomplete. They did agree, however, at this time that a nonappealable judgment of dissolution might be entered[3] and the remainder of the proceeding, namely, the division of community property and permanent support for Sophia, might be continued.

Following an appearance in court that same day (Nov. 30, 1971) to discuss, among other things, the form and contents of the interlocutory decree, Sophia's attorneys met with her. She did not wish to wait any longer for the completion of the proceeding. When they indicated that they probably would not have their discovery completed by the following March, when the remainder of the case was scheduled for trial (after three continuances for completion of discovery by her), she became upset and discharged them.[4]

Thereafter, on December 22, 1971, without obtaining any express authority from Sophia to do so, Sophia's attorneys moved (Code Civ. Proc., § 1005.5), on her behalf, that appellant be directed to pay them additional attorneys' fees for services rendered Sophia and costs incurred subsequent to the initial award and prior to their discharge by Sophia. They also moved separately at the same time for permission to withdraw from the case as Sophia's attorneys. Despite Sophia's testimony to the contrary, she presumably received by mail true copies of these notices of the motions together with the supporting declarations of her attorneys. (Evid. Code, § 641.)

On January 5, 1972, the trial court heard both motions. Sophia was not personally present. The court granted the motion of the attorneys to withdraw from the case and substituted Sophia in propria persona for them. The court postponed consideration of Sophia's motion that appellant pay her attorneys additional fees and costs until the trial of the remaining issues

---

[2]In this connection, though, we note that appellant did educate his three children in a private university and set one up in a profession.

[3]The interlocutory and final judgments of dissolution of marriage were both entered in December 1971.

[4]The attorneys testified that they were not discharged but quit instead. In any event, the attorney-client relationship then terminated except for the winding-up of the relationship as hereinafter explained.

in the proceeding or until after such issues were settled. The attorneys immediately gave Sophia notice by mail of these rulings.

In February 1972 Sophia obtained new attorneys to represent her in the proceeding. These attorneys, on the basis essentially of the discovery made by Sophia's former attorneys, negotiated in June 1972 a settlement of the remaining issues in the marital dissolution proceeding. Under this settlement Sophia received $63,000 in real estate and $40,000 in nonmodifiable secured weekly support payments over a 12-year period. As a part of this settlement she also agreed to pay her then attorneys $3,000 for their services and she further agreed that she and appellant would split equally whatever amount might be awarded her former attorneys in fees and costs and that she would cooperate with her former husband in this aspect of the matter.

## DISCUSSION

*The Trial Court Had Jurisdiction to Make the Award.*

■ Appellant's first contention is that the award of additional attorneys' fees and costs to Sophia's first attorneys was in excess of the trial court's jurisdiction. He concedes that the court had reserved to itself jurisdiction of the subject matter of this award but he claims that Sophia's attorneys had no authority to request these additional fees and costs, once they had been discharged. He asserts that upon such discharge the attorney-client relationship was completely terminated.

We disagree. We think that the attorney-client relationship by Sophia and her first attorneys terminated upon their discharge on November 30, 1971, for all purposes except the winding-up of the relationship. Such winding-up *in this case* involved the doing of two things—(1) the making of the motion on her behalf that appellant pay additional fees and costs to her attorneys, and (2) the formal change in Sophia's representation in the proceeding. In the interval between the discharge and the substitution of representation, Sophia's attorneys, *as her attorneys of record,* alone could appear in court for her and continued as her only attorneys in the proceeding. (See *Epley* v. *Califro,* 49 Cal.2d 849, 854 [323 P.2d 91].)

We hold that, notwithstanding Sophia's discharge of these attorneys, they, as her agents, had the implied authority to file thereafter the motion on her behalf that appellant pay these additional sums. Unlike the situation in *Meadow* v. *Superior Court,* 59 Cal.2d 610 [30 Cal.Rptr. 824, 381 P.2d 648], Sophia had at this time no disagreement with her attorneys over

her former husband paying these additional fees and costs. In her personally verified petition initiating the dissolution proceeding she had requested such fees and costs and, unlike *Meadow,* she had personally alleged in her declaration in support of her proposed order to show cause, accompanying her dissolution petition, that she needed these fees and costs and that appellant had the ability to pay them. In view of her personal invocation of the court's jurisdiction to grant this relief and in view of the court's subsequent grant of this relief in part and express reservation of its power to grant further such relief, we hold that her attorneys reasonably believed that, notwithstanding their discharge, they, as her attorneys of record, had implied authority from her to file for her this motion for additional fees and costs.[5] They remained her attorneys in the dissolution proceeding until one or the other of the requirements of Code of Civil Procedure section 284, had been satisfied.[6]

We label the motion for additional fees and costs as being on Sophia's behalf because it was then in her interest. Otherwise she would have then been liable to pay by herself to these attorneys the reasonable value of their services to the extent the same had not been paid by the initial award. (See *Fracasse* v. *Brent,* 6 Cal.3d 784, 792 [100 Cal.Rptr. 385, 494 P.2d 9].) Her motion that appellant pay this liability directly to the attorneys, pursuant to Civil Code sections 4370 and 4371, avoided circuity in litigation—they suing her and she then asking the court to order appellant to pay what she had paid.

Furthermore, by not appearing at the hearing of the two motions after prior notice of them and there objecting to the motion for additional fees and costs, she acquiesced in their having made the motion for her. She further acquiesced when she made no objection to this relief being granted her until the motion actually was heard. Her then change of position can be explained by her intervening promise in the overall settlement of the dissolution proceeding to cooperate with her former husband with respect

[5]We recognize that the statutory right under Civil Code sections 4370 and 4371, at issue here, is that of the former wife alone. Her first attorneys had no proprietary interest therein and their right to such fees and costs was derived entirely from her. (See *Meadow* v. *Superior Court, supra,* 59 Cal.2d 610, 615-616.)

The factual situation in this case lies between that of *Meadow* and that of *Davis* v. *Davis,* 219 Cal.App.2d 83 [32 Cal.Rptr. 720].

[6]Section 284 reads: "The attorney in an action or special proceeding may be changed at any time before or after judgment or final determination, as follows:

"1. Upon the consent of both client and attorney, filed with the clerk, or entered upon the minutes;

"2. Upon the order of the court, upon the application of either client or attorney, after notice from one to the other."

to this dispute over the fees and costs due her former attorneys and to pay one-half of whatever fees and costs were awarded them.

We hold that her withdrawal of her consent to prosecute the motion was legally ineffective because the attorney-client relationship between herself and her former attorneys prosecuting the motion had completely terminated on January 5, 1972. After that time neither could alter the incidents of their previous principal-agent relationship.

Accordingly, we hold that the trial court had jurisdiction to make the challenged award. (Cf. *Davis* v. *Davis, supra,* 219 Cal.App.2d 83; see *Yanchor* v. *Kagan,* 22 Cal.App.3d 544, 549 [99 Cal.Rptr. 367]; Rest. 2d Agency (1958) § 26, coms. (a), (d), § 43, subd. (1).) [7]

*The Award Was Proper.*

■ Appellant attacks the award itself on several grounds. First, he contends that in view of the $63,000 in real estate (part of which was income-producing property) that Sophia received in the final settlement, she then had no need for this award thereafter made to her former attorneys. Appellant's premise is faulty. A former wife is not required to impair her capital in order to finance marital dissolution litigation. (See *Sigesmund* v. *Sigesmund,* 115 Cal.App.2d 628, 632 [252 P.2d 713]; *Howard* v. *Howard,* 141 Cal.App.2d 233, 237 [296 P.2d 592]; *Wright* v. *Wright,* 148 Cal.App.2d 257, 270 [306 P.2d 536]; *Goto* v. *Goto,* 187 Cal.App.2d 594, 598 [10 Cal.Rptr. 14].)

Secondly, appellant asserts that the work done by Sophia's initial attorneys was unnecessary because it all related to his business and he received

---

[7]Appellant argues that a conflict of interest existed between Sophia and her former attorneys over this request for additional fees and costs. But, as we have pointed out, no such conflict existed when the application for them was made. It arose only subsequently when she voluntarily, in her agreement with her former husband to end the litigation, promised to pay one-half of these fees and costs. Her former attorneys were not parties to this agreement and they should not in all fairness be disadvantaged by it. In any event, as already indicated, as to them it was an ineffectual withdrawal of prior consent.

Presumably, the only reason why this matter of the additional fees and costs for Sophia's first attorneys was not disposed of before the remainder of the dissolution proceeding was concluded was because of the provision in Civil Code section 4371 "for partial or total reallocation of fees and costs to cover the services and cost of successor counsel. . . ." Despite appellant's contention to the contrary, no basis exists in this case for the invocation of this provision. Here, successor counsel agreed with Sophia as to their fees. The fees and costs at issue on this appeal are essentially for the discovery work done by Sophia's former attorneys, which work, as we have previously noted, formed the basis for the settlement successor counsel negotiated. As we have already indicated, some basis perhaps exists for concluding that if Sophia had not changed lawyers she might have fared better in the final settlement.

the stock of this business in the final settlement. We disagree. As previously indicated, without the protracted and extensive discovery done by these attorneys there would have been no basis for the final settlement.

■ Finally, appellant contends that the award is excessive in amount. This contention is likewise without merit. The trial court determined that these attorneys (one of whom is also a certified public accountant) spent 143 hours on the case. The court placed a value of $70 per hour on this work. Although this rate was in excess of the value placed upon the work by the attorneys themselves initially and by successor counsel on their work, it was less than the rates of $75 and $100 an hour placed on the work by an expert witness who considered quite properly the standing, experience, professional competence and special expertise of these attorneys and the results they obtained for their client.[8] (See *Dietrich* v. *Dietrich*, 41 Cal.2d 497, 506 [261 P.2d 269].)

We hold that the work done by these attorneys was reasonably necessary for Sophia's prosecution of the marital dissolution proceeding (see Civ. Code, § 4370, subd. (a) )' and that the trial court did not abuse its discretion in evaluating the reasonable value of the work.

In closing, we note that the motion at issue is incorrectly described in the judgment as being that of the attorneys rather than that of Sophia. The judgment must be modified to correct this mistake.

The judgment is modified to strike therefrom all reference to the motion at issue as being that of Block, Bulloch & Scully and Morris Singer rather than that of Sophia Borson and by identifying the motion appropriately in the judgment as being that of Sophia Borson. As so modified the judgment is affirmed. Costs on appeal are awarded directly to Block, Bulloch & Scully and Morris Singer.

Allport, J., and Loring, J.,* concurred.

A petition for a rehearing was denied March 26, 1974.

---

[8]Appellant complains that the attorneys were allowed to raise the amount of fees requested by them by amending at the conclusion of the evidence Sophia's motion to conform to the proof. He has shown no prejudice to himself resulting from the allowance of such an amendment. Such allowance was therefore proper. (See *Rabbit* v. *Atkinson*, 44 Cal.App.2d 752, 760 [113 P.2d 14].)

Appellant has not challenged the amount of the award for costs.

*Assigned by the Chairman of the Judicial Council.