[Civ. No. 46674. Second Dist., Div. Four. Jan. 20, 1976.]

In re the Marriage of GLORIA and MORTON WILLIAM BERLIN.
GLORIA BERLIN, Appellant, v.
MORTON WILLIAM BERLIN, Appellant;
ROBERT F. JOHNSON et al., Respondents.

**COUNSEL**

Gloria Berlin and Morton William Berlin, in pro. per., and Roger M. Grace for Appellants.

Bernay, Christensen & Goldberg, Abbott C. Bernay, David G. Licht, Elstein, Spector, Richland & Buter and Irwin Buter for Respondents.

**OPINION**

**KINGSLEY, Acting P. J.—**

I

This is an appeal from a portion of an interlocutory decree of dissolution, which portion awards $10,000 each to the trial counsel for the appellants in their dissolution proceeding. Although the notice of appeal is executed, in propria persona, by both Gloria and Morton, no appearance on Morton's behalf has been made in this court. However, since a reversal of the portion of the award to Gloria's attorney would, under the circumstances of this case, affect the award to Morton's counsel, Morton's nonappearance does not result in a dismissal of the appeal by him. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 132, p. 4128.)

II

The Berlins were engaged in what the record makes clear was a bitter dispute over the division of a large amount of community property. After several days of negotiating conferences in the chambers of the trial court, the attorneys announced that they had reached a stipulation that was acceptable to Morton and was acceptable to Gloria "with the exception of the court fixing attorneys' fees and costs." Thereafter, counsel for Morton proceeded to read into the record the proposed stipulation referred to. After reading a long stipulation covering spousal support, child support and the division of various assets, the proposed stipulation then recited the existence, as community property, of several savings and loan accounts, totaling $136,556.53. There followed the ensuing language:

"The proceeds of the above accounts shall be disbursed as follows:

"To Robert F. Johnson, petitioner's attorney, the sum to be determined by the court as fees and the sum of $785 as court costs.

"To Irwin Buter, respondent's attorney, the sum to be determined by the court as fees and the sum of $614 as court costs."

After a discussion concerning other matters in the proposed stipulation, the trial court turned its attention to Gloria's reservation about the

fixing of attorney fees. In a colloquy extending over several pages of the transcript, the trial court explained to Gloria, several times, that, if she accepted the proposed stipulation as read, the trial court would fix the fees, to be paid out of the community property. At her request, a recess was called. After the recess, the trial court made the following statement:

"THE COURT: All right. Before we proceed with that I wish to make one observation so that it's clear just what the situation is and so that there is no misapprehension with respect to the candor of the court.

"I have met with counsel in chambers several times, in which we have discussed in some detail and at great length the contentions being made in this matter with respect to primarily the division of property, but also with respect to support, and the question of the division of the community assets, the issues relating thereto, the disposition of community obligations, and in particular the question of the treatment of the requests of attorney's fees as a community obligation. Under the law reasonable attorney's fees are treated as a community obligation in a domestic relations matter.

"The question of the amount of time counsel have spent, the magnitude of the problems, their complexity, and the difficulties in attempting to reach a fair settlement in the matter as between the parties have all been discussed in connection with the matter of fees. The sum of $10,000 for counsel fees was proposed as a reasonable figure, and the court did indicate to counsel that it felt that in view of what appeared to be the dimensions of the case and the amount of time and effort and skill that was required in its resolution, that that appeared to be a reasonable figure.

"Now my view is that there is no right answer to most questions that come up in a matter involving relationships between parties and in particular setting amounts. There is no right amount for spousal support. There is a range of reasonable support, and there is a range within which a reasonable mind would fix attorney's fees in a particular matter, and there is no question but that people might disagree as between the range of choices in a particular case. So I want to be perfectly candid with you that that was the import of the discussion that was had.

"Since the posture of the case appears to be that the issue will be submitted to the court, I've indicated to counsel in chambers that I would require from them a statement under penalty of perjury in which

they would indicate to the court the precise nature of the duties performed by them, so that I can evaluate the requests that will be made.

"Now with that understanding, Mrs. Berlin, I would again ask you, do you understand the stipulation that has been recited in court, and do you agree to it?"

After further discussion, Gloria ultimately stated that she understood the stipulation and agreed to it.

Thereafter the two attorneys submitted to the trial court, and served on both litigants, their sworn declarations as to work performed and expenses incurred. That for Mr. Johnson, Gloria's attorney, was for fees of $11,454 and for expenses of $150.94; that for Mr. Buter, Morton's attorney, was for fees of $12,500 and expenses of $614. The interlocutory judgment signed by the court, awarded, as we have said above, $10,000 as fees to each attorney, together with the expenses claimed.

Gloria, by new counsel, moved to quash a writ of execution theretofore issued to Mr. Johnson in an attempt to collect the fees thus awarded to him. The ground stated in the motion was "that the award of attorney's fees to MR. JOHNSON are excessive and further, as appears from the DECLARATION OF GLORIA BERLIN, submitted herein, there is a serious question for this Court to resolve as to the veracity of MR. JOHNSON'S DECLARATION for Attorney's fees." Gloria's declaration, submitted in support of the motion, deals chiefly with a contention that Mr. Johnson had grossly overstated the hours devoted to the case; she also made several complaints of the manner in which Mr. Johnson had conducted the case. Appearing by the same new counsel, Morton sought to vacate and set aside the interlocutory judgment of dissolution in whole or in part. Morton's declaration, submitted in support of his motion, dealt exclusively with the matter of alleged excessive fees. At oral argument in this court, respondent Johnson conceded that, although Gloria's notice of motion and supporting declaration did not directly seek to set aside the portion of the interlocutory decree herein appealed from, the hearing proceeded on the assumption that Morton's motion was available to Gloria and that Gloria's motion was available to Morton. Under those circumstances, we treat the issue argued to us on the assumption that it was properly raised by Gloria in the trial court.

At the hearing on the motions, counsel argued at length on the grounds set forth in the two notices of motion and in the two

declarations; thereafter—and for the first time in the trial court—counsel turned to the sole issue now before us; namely, whether the stipulation to which Gloria had agreed was for a maximum total of $10,000 to be divided between the two attorneys, or for a maximum fee of $10,000 for each attorney.[1] We quote the reporter's transcript on that matter:

"MR. GROSS: Your Honor points out about the sum of $10,000 for counsel fees was proposed as a reasonable figure, and you indicated that, you had indicated to counsel that you felt that that appeared to be a reasonable amount. Now I would request that your Honor reread that statement and that paragraph very carefully, and I feel if you will, you will note there is no mention that $10,000 was to be the attorney's fees for each attorney. On the contrary it seems quite obvious from the way the statement is stated that $10,000 is for counsel fees in the plural as a reasonable figure, and since we're talking about counsel fees to be drawn from the community assets to be paid to counsel, the two counsel that represented the two parties, it would seem logical that the parties would have interpreted this as meaning the total figure of $10,000 as a total attorney's fees to be shared and divided between these two attorneys in representing these two parties, and if you'll note that this—you went on, and you went over this very carefully. Nowhere else was it ever mentioned that this was to be $10,000 for each counsel, and it was on the basis—

"THE COURT: Now Mr. Gross, you have the disadvantage, which is obviously unavoidable, of not having been here, but I was here. There was no question in my mind, and I say quite flatly to you that it was clear that there was no question in Mr. Berlin's mind, nor was there any question in Mrs. Berlin's mind that the request being made was for $10,000 for each attorney, and the reference made by the court was to that figure as well. Now—so you know there is just no point dwelling on a point which in terms of what went on at the time of the hearing and what was explained to the parties was made quite clear.

"MR. GROSS: I can only say, your Honor, that reading the record—

[1] As we discuss below, Gloria argues in her brief that the trial court had no jurisdiction to award counsel fees to both parties to be paid out of the community property and, thus, (inferentially) that the statement of the trial court to the contrary, above quoted, was erroneous. However, at oral argument, counsel agreed that that issue had not been raised in the trial court and that Gloria's only contention, on this appeal, was that she had agreed only to a $10,000 total attorney fee award and not to awards of $10,000 to each counsel.

"THE COURT: The question whether there has been a misrepresentation of time and effort put into the case—that's different, and that's going to depend on whether or not an adequate showing can be made that there was some misrepresentation; but to seize, as you have, upon the semantics of the court's statement and to argue that somehow or other there was a misapprehension that we were talking about 10 for both instead of for each, I think really is to distort the clear meaning and the clear understanding that was conveyed at that time. I just want to make that clear to you because you were not here, and you were basing your argument on what you construe to be a possible interpretation of language.

"There was no such apprehension, and I would be quite surprised if either Mr. Berlin or Mrs. Berlin would now contend that there was." The trial court denied both motions to quash. Both spouses have appealed from that portion of the interlocutory decree awarding $10,000 attorneys' fees to each attorney.

Gloria's failure to raise the issue now argued to us until late in the hearing on the motions does not bar her from arguing, on this appeal from the judgment, that the part attacked was based on an invalid stipulation, but the lateness in raising that issue, and the failure to include it in Gloria's declaration filed in support of her motion, raises serious questions as to the validity of her claim of a lack of understanding of the stipulation's terms and effect. We note that, at no time in the trial court or here has Morton questioned the validity of the stipulation or the trial court's interpretation and implementation thereof.

### III

■ Gloria first argues that the trial court had no power to award attorney fees to both counsel to be paid out of the community property. The course followed by the trial court was expressly approved by this court in *Wong* v. *Superior Court* (1966) 246 Cal.App.2d 541 [54 Cal.Rptr. 782], where we said (at p. 547): "When the issue of community debts is before the court and the community property is about to be divided, there appears to be no sound reason for the court not to consider the husband's liability to his attorney in determining the amount of community property which will remain for distribution as it would consider any other community debt which is not in dispute." In *In Re Marriage of Jafeman* (1972) 29 Cal.App.3d 244 [105 Cal.Rptr. 483], the court said (at pp. 266-267): "It should be noted here, however, that

although an award of attorney's fees is independent of the division of the community property, a spouse's liability for his own attorney's fees may be considered in relation to the division of the community property under appropriate circumstances. In *Wong* v. *Superior Court,* 246 Cal.App.2d 541, 547 [54 Cal.Rptr. 782], it was recognized that the parties, by proper amendment of their pleadings, may request that their liability to their respective attorneys be treated as a community debt. In such a situation it is proper for the court to consider this obligation, just as it would any other community debt which is not in dispute, in determining the amount of community property which is available for distribution."

As we have noted, in footnote No. 1, the contention that the trial court lacked jurisdiction, in the face of the stipulation, to make an award off the top of the community cash, was expressly abandoned at oral argument.

## IV

█ Gloria appears to contend that the trial court erred, at the hearing on the motions, in refusing to permit Gloria to testify orally as to what her understanding was of the stipulation. The point is without merit. At the opening of the hearing, the trial court stated: "THE COURT: Matters such as this are normally handled on moving papers and declarations, so that I'll hear oral argument and I'll go over the moving papers, and then I'll make a decision as to whether or not I can rule on the matters that are before me or whether I ought to permit further testimony in connection with the matter; but I'm just not going to open it up for that kind of procedure until I'm satisfied that it cannot be fairly determined without that kind of testimony."

The hearing continued, the issues were argued, and the motions were submitted without further request for oral testimony. If the refusal to permit oral testimony was error (which we do not determine) it was waived by not repeating the request at the time suggested by the court.

## V

█ Whether Gloria had misunderstood the nature and effect of the stipulation was a matter of fact. The trial court, as it pointed out, was a party to the proceedings leading up to the stipulation; it was in a position to weigh the merits of the late claim of a misunderstanding. We cannot

say that it erred in determining, as it did, that there had been no misunderstanding.[2]

The portion of the interlocutory decree of dissolution appealed from is affirmed.

Dunn, J., concurred.

**JEFFERSON (Bernard), J.**—I dissent.

The majority decision in this case elevates form over substance in holding that petitioner Gloria Berlin's objection to the court's order for attorney's fees of $10,000 to her own counsel and $10,000 to her husband's counsel was predicated below solely on the theory that the amounts awarded were excessive and, therefore, that she has little standing to raise an objection here that she was misled into giving a consent to a stipulation by the trial court's erroneous statements as to the law, and that she was misled by the trial court's statement as to the amount of attorney fees he was intending to fix.

A review of the record in the case at bench indicates clearly that petitioner Gloria did not give an understanding or knowledgeable consent to the award of fees made by the trial judge, and that she was misled into finally consenting to the stipulation proposed by her attorney and the attorney for her husband. The record indicates that, over and over, when the trial judge sought to determine whether petitioner understood the stipulation, agreed to by counsel for the parties, and was agreeable to its terms, petitioner raised repeated objections to the proposal as to attorney's fees on the ground that she had paid her own attorney a substantial sum, and did not know what services were being claimed by her attorney and what the amount of the fee would be.

It is obvious in this case that the request that attorney's fees be treated as a community obligation and be made payable from community assets, was a request being made by the respective attorneys, and not by the respective parties. In seeking to obtain the consent of the parties, the trial judge prefaced his remarks to the parties by stating that he had met with counsel in chambers several times with respect to the various issues involved in the case, and stated that one of the issues was "in particular

---

[2]Since we accept the trial court's fact finding that there was no misunderstanding, we need not, and do not, reach the arguments as to the effect of such a misunderstanding had it existed.

the question of the treatment of the requests for attorney's fees as a community obligation. Under the law reasonable attorney's fees are treated as a community obligation in a domestic relations matter."

This latter statement is not a correct statement of the law since it assumes that the parties to a domestic relations case are in *agreement* that attorney's fees are to be awarded to the attorneys for both parties and are to be considered and treated as a *nondisputed* community debt. Thus, in *In re Marriage of Jafeman* (1972) 29 Cal.App.3d 244 [105 Cal.Rptr. 483], the court points out that in *Wong v. Superior Court* (1966) 246 Cal.App.2d 541 [54 Cal.Rptr. 782], it was recognized that the parties may *agree* that their liability to their respective attorneys shall be treated as a community debt and, if there is such agreement, a party's obligation to his own attorney for fees then becomes a community debt "which is not in dispute." (*In re Marriage of Jafeman, supra,* 29 Cal.App.3d 244, at p. 267.)

But neither *Wong* nor *Jafeman* can be interpreted as holding that a *disputed* obligation of attorney's fees between a party and his own attorney is to be treated as a community debt.

In view of this incorrect statement of the law by the trial court with respect to a disputed obligation between a party and his attorney for attorney's fees being automatically treated as a community obligation, there is little doubt that petitioner Gloria was misled into agreeing to the stipulation which, in effect, would result in a judgment against her in favor of her own attorney for the latter's attorney's fees, which would permit him to levy execution upon her property.

The trial judge then stated, in pointing out to the parties what he had discussed in chambers with counsel, that "[t]he sum of $10,000 for counsel fees was proposed as a reasonable figure, and the court did indicate to counsel that it felt that in view of what appeared to be the dimensions of the case and the amount of time and effort and skill that was required in its resolution, that that appeared to be a reasonable figure." Petitioner Gloria contends, not unreasonably, that it was her impression that the trial judge meant by his latter statement that $10,000 would constitute the total counsel fees for both attorneys.

At another point in the colloquy between the trial judge and petitioner Gloria regarding the explanation or statements being given by the trial court, petitioner Gloria stated: "Well, I don't understand how the court

will determine their fees. I had a contract with Mr. Johnson to pay him six—" and petitioner's counsel interrupted with the statement: "He said with the exception of that." The petitioner then stated: "With the exception of that. That's the only thing I don't understand." The trial judge then stated that, "[n]ow in every domestic relations action where counsel have to be compensated, the matter is handled in one of two ways: Either the parties and their lawyers agree on the amount, *or it becomes a litigated issue, which is awarded—and an award is made by the court.* I'm not sure that I know of any other way in which to resolve the matter." (Italics added.)

Here, again, the trial judge is telling the petitioner that, in a domestic relations proceeding, if a party does *not* agree with her own lawyer as to the amount of his fee, the trial judge has the right to set the fee which she is required to pay her lawyer, as a litigated matter in *that* proceeding, and that the fee, so determined by the trial judge, will become a judgment against her in favor of her own attorney.

This case, therefore, is not unlike *Wong, supra,* relied on by the majority in its opinion. But my view of what *Wong* holds is entirely different from the majority's view of the *Wong* holding as stated in the majority's opinion herein.

In *Wong,* the plaintiff's attorney in a divorce action claimed an amount which he contended to be the reasonable value of his fees and requested that the amount be allowed by the court as a proper charge against the community. However, before the attorney's fees could be set forth in the interlocutory judgment, plaintiff discharged his attorney and moved to set aside the submission on the issue of attorney's fees. That motion was denied and, in the ensuing interlocutory judgment, an amount for attorney's fees in favor of plaintiff's attorney, was listed as a community debt to be paid from community assets.

The *Wong* court held that, in the *absence* of the plaintiff's consent, the court was without jurisdiction to establish, as a part of the interlocutory judgment of divorce, a judgment for attorney's fees against the plaintiff and in favor of his discharged attorney. The court, at pages 545-546, quoted from *Meadow* v. *Superior Court,* 59 Cal.2d 610, 616 [30 Cal.Rptr. 824, 381 P.2d 648] as follows: "And 'it is only the party who has the right to apply for an award of attorney's fees and section 137.3 and 137.5 [of the Civil Code] do not give the attorney for a party, either *before* or after any discharge of his services by his client, the right to make a motion in

his own behalf for an award of such fees . . . and the trial court is without jurisdiction to . . . proceed with such motion or to make any award thereunder.' (*Marshank* v. *Superior Court* (1960), *supra*, pp. 607-608 [9, 10].)" (Italics added.)[1]

In *Wong*, although the defendant wife did not make any objection with respect to the attorney's fees being requested by the plaintiff husband's attorney as being unreasonable or an improper charge against the community estate, the husband, as plaintiff, did raise an objection. The *Wong* court pointed out that, a divorce action is a controversy between the parties to the divorce action, and that, in such an action, the court lacks jurisdiction to determine a controversy over fees between one of the parties and *that* party's attorney. Thus, the court remarked that "the divorce action was not the place to determine the amount which Norman Wong [the plaintiff] should be ordered to pay to his attorney." (*Wong, supra*, 246 Cal.App.2d 541, at p. 549.)

The *Wong* court also held that the interlocutory judgment, in ordering plaintiff, Norman Wong, to pay attorney's fees to *his own* attorney, deprived such party of his property without due process of law. The court specifically stated that "[s]uch an order cannot be equated with a direction to pay *opposing* counsel or to pay an *acknowledged* family creditor." (*Wong, supra*, 246 Cal.App.2d 541, at p. 548.) (Italics added.)

*Wong* was decided before the enactment of the Family Law Act. But this act has not changed the legal principles stated in *Wong*. Thus, in *In re Marriage of Jafeman, supra*, also relied upon by the majority herein, the question arose as to the jurisdiction of the court to award attorney's fees following enactment of the Family Law Act. The sections of the Family Law Act relating to attorney's fees are found in Civil Code sections 4370 and 4371. *Jafeman* points out that "[s]ection 15 of the Statutes of 1970, chapter 311, page 706, referring to section 4370, provides, 'This act does not constitute a change in, but is declaratory of, the existing law.' " (*Jafeman, supra*, 29 Cal.App.3d 244, at p. 263.)

In discussing the question of the liability of a spouse for *that* spouse's own attorney's fees, the *Jafeman* court indicates that such a liability may be considered in relation to the division of the community property

---

[1]It is to be noted that under present Civil Code sections 4370 and 4371, an order for attorney's fees may be made payable directly to a party's attorney. But these sections do not confer upon an attorney any independent right or cause of action for fees. (See *In re Marriage of Borson* (1974) 37 Cal.App.3d 632, 638, fn. 5 [112 Cal.Rptr. 432].)

under appropriate circumstances. The *Jafeman* court refers to the *Wong* case and interprets *Wong* by stating that, there, "it was recognized that the *parties,* by proper amendment of their pleadings, may request that their liability to their respective attorneys be treated as a community debt. In such a situation it is proper for the court to consider this obligation, just as it would any other *community debt which is not in dispute,* in determining the amount of community property which is available for distribution." (*Jafeman, supra,* 29 Cal.App.3d 244, at pp. 266-267.) (Italics added.)

*Jafeman,* therefore, which was decided after the enactment of the Family Law Act, reiterates the view of *Wong* that, in order for a party-spouse's liability to *that* party-spouse's *own* attorney to become a judgment against such party-spouse in favor of the spouse's own attorney, there must be a *consent* and *agreement* by the *parties* that such an obligation is to be deemed a community debt "which is not in dispute."

In the case at bench, it is unreasonable, unrealistic and unsound to hold that petitioner Gloria agreed and consented for the trial judge to determine the amount of attorney's fees which she owed to her own attorney and to consider such amount a "nondisputed" obligation to become a part of the interlocutory judgment as a judgment against her and in favor of her own attorney.

In the case at bench, the explanations made by the trial judge to petitioner Gloria, and the colloquy between him and petitioner, leave no doubt that petitioner was *not* giving any *meaningful* or *knowledgeable* consent to jurisdiction by the trial judge to award a $10,000 fee to her attorney and a $10,000 fee to her husband's attorney as judgments against the community assets.

The trial judge in the case at bench had the same mistaken notion of his jurisdiction to award attorney's fees in favor of an attorney and against his own party-client as did the trial judge in *Wong,* whether such party consented or not, and even though there was a dispute between such party and that party's attorney as to the fees. This situation is not to be confused with the jurisdiction of the trial court to award one party attorney fees as against the adverse party.

As pointed out in *Wong* and *Jafeman,* if, in the case at bench, there had been a meaningful consent by petitioner Gloria to her liability to her

own attorney for fees as a community debt, the trial judge's award obviously would have been proper. But in view of the trial judge's stated views that a party's liability for fees to that party's own attorney is considered as a community obligation under the law and that the court is entitled to make the award either by consent or by the issue being litigated in the domestic relations action itself, the final consent to the stipulation, given by petitioner Gloria, should not be considered other than an invalid consent, based upon, and the product of, erroneous views of the law stated by the trial judge, and of an obvious misunderstanding by petitioner.

At the time of the colloquy between the trial judge and petitioner Gloria in the instant case, petitioner was without representation by counsel as was the plaintiff in the *Wong* case. In the case at bench, petitioner's attorney was an adverse party to petitioner in the matter of the issue of his fees. Petitioner, therefore, was not represented by counsel in this contest with her own attorney, with the result that she was being deprived of her property without due process of law.

In this situation, I see little support for the majority's view that petitioner has waived consideration of this issue on this appeal.

Therefore, I would reverse that portion of the judgment appealed from by petitioner.

A petition for a rehearing was denied February 5, 1976. Jefferson, J., was of the opinion that the petition should be granted. Appellants' petition for a hearing by the Supreme Court was denied March 18, 1976.