[No. A023746. First Dist., Div. Five. July 12, 1985.]

In re the Marriage of JUDY MARIE and DAN HATCH.
JUDY MARIE HATCH, Appellant, v.
DAN HATCH, Respondent.

1214

## Counsel

Susan F. Cameron for Appellant.

Bruce J. Kitchin for Respondent.

## Opinion

**KING, J.—**  In this case we hold it is an abuse of discretion for trial courts to deny motions for pendente lite attorney fees and costs in marital dissolution proceedings without considering the needs of the requesting spouse and the ability to pay of the spouse against whom the award is sought. California's public policy in favor of expeditious and final resolution of marital dissolution actions is best accomplished by providing at the outset of litigation, consistent with the financial circumstances of the parties,

a parity between spouses in their ability to obtain effective legal representation.

Judy Marie Hatch appeals from an order denying her motion for temporary attorney fees in her action for dissolution of her marriage to Dan Hatch. She contends the court failed to exercise discretion in denying her motion by summarily refusing to award temporary attorney fees without considering the relative incomes and needs of the parties. The trial court did fail to exercise its discretion and we therefore must reverse the order.

Judy and Dan separated on November 25, 1982, after a three-year marriage. Prior to marriage they had lived together for some time, although the exact length of time is in dispute. They had two children, Lonnie, born in 1978, and Shawna, born in 1980.

Dan, a journeyman plumber, was unemployed from November 25, 1982, until January 10, 1983. While unemployed he received unemployment benefits and worked cutting wood. He began working as a plumber again in January, approximately one week prior to the hearing on Judy's motion, and continued to supplement that income by cutting wood. Judy estimates Dan's net monthly income is approximately $4,000 per month. Dan estimates it is $2,150.

Judy had been a housewife and mother since 1978, and had not worked outside of the home for 10 years. She had no income, but was looking for work at the time of the court hearing. In the month following separation she received only $100 from Dan. Dan claimed that Judy had "taken" over $2,800 from him during the last year of their marriage by writing checks without his knowledge. Between separation and the hearing Judy lived with friends. Upon receiving an order for temporary support she planned to find a place to rent. She had custody of the couple's youngest child. Dan remained in the family residence with their older child and a child of Judy's by a prior relationship, who Dan planned to adopt.

Judy obtained an order to show cause requesting child and spousal support, attorney fees and costs, and other matters. She had been unable to pay her attorney anything for fees or costs prior to the hearing.

Judy claimed that community property from the couple's marriage consisted of a community interest in a residence, title to which was held by Dan's parents, a community interest in Dan's union pension, and personal property, including two trucks and at least three motorcycles. Dan contended there was no community interest in the residence. In support of her

request for attorney fees and costs Judy's declaration noted the valuation of the community property involved complexities, that both an actuary and an appraiser would be required, and that Dan's parents would probably have to be joined in order to determine the parties' interest in the residence.

Dan acknowledged he had paid his attorney $500 on account of attorney fees, and had become obligated to pay additional charges of $75 an hour at a rate of $100 a month.

The hearing on the order to show cause was held on January 18, 1983. Just before the hearing the parties stipulated that Dan would pay Judy $250 per month for temporary spousal support, would pay $250 per month for temporary child support, and would provide her with a car which he would buy and maintain. At the hearing Judy's counsel asked the court to order temporary attorney fees because Judy had no income, had not been able to pay her attorney anything, and had no ability to pay her fees or costs.[1]

At this point the trial court interrupted counsel, and effectively put an end to the hearing on the issue of attorney fees, stating: "Well, Ms. Cameron, let me give you a piece of advice. You're relatively new around here. Spare yourself that kind of motion. I never grant attorney fees around here, or virtually never, basically, because one of the main factors in determining attorney fees is the property that is awarded to the parties. And that is a factor which cannot be determined until the ultimate divorce. In other words, . . . in the family-law area an attorney ordinarily carries the client until the time of trial, if the lawyer has reason to suppose that he will be ultimately paid, you see, if there is property. [¶] . . . And most attorneys don't even ask for it anymore, except in a situation where there's no prop-

---

[1] On the subject of costs, the trial court initially responded to Judy's request for costs to employ an actuary to value the community interest in Dan's pension plan by asking, "Well, why do you want an actuary?", explaining that although there is a pension, "in nine cases out of ten, the court simply retains jurisdiction over pensions rather than dividing it." Such a ruling would also fail to be a proper exercise of discretion, since in short term marriages with young couples it may well be preferable to cash out the nonemployee spouse's interest in the pension plan. The court can potentially mislead litigants if they believe it has an unwritten policy not to cash out pension interests. See *In re Marriage of Kasper* (1978) 83 Cal.App.3d 388 [147 Cal.Rptr. 821].

The trial court did order a payment for the costs of the actuary, so this issue is not before us on appeal. The award of reasonable pendente lite costs is critical for two reasons. First, most experts will refuse employment in dissolution cases without the payment of a retainer. Secondly, it aids in settlement of cases involving cashouts of pensions, or the valuation of other assets, if expert opinion is available as a basis for the parties reaching agreement on the value of assets for purposes of division.

erty at all and the husband has decent earnings. [¶] No, I'm not going to rule on attorney fees. I can tell you that right now."[2]

Judy contends that the court failed to exercise discretion in denying her motion for temporary attorney fees. She is correct.

The award of attorney fees pendente lite in family law cases is governed by Civil Code section 4370, which provides that during the pendency of any proceeding under the Family Law Act the court may order a party to pay attorney fees and costs which are reasonably necessary for maintaining or defending the proceeding and that such an award may be augmented or modified from time to time.[3] The award is within the trial court's broad

---

[2]From supporting declarations filed by the parties prior to the order to show cause, they each recognize the trial court had an unwritten policy or rule that it did not make pendente lite orders for attorney fees.

Unfortunately it is often true that the financial circumstances of spouses at the breakup of marriages do not permit timely payment of counsel for services as they are rendered and, in fact, counsel for financially disadvantaged spouses rarely receive final payment until long after the litigation is over. However, the courts should not make a bad situation worse. The suggestion of the trial court that attorneys handling marital dissolution cases must be prepared to "carry the client until the time of trial" is not only demeaning to attorneys handling family law cases, it fails to consider the present day realities of the economics of the practice of law. Today's high overhead costs require that payment be received as rapidly as possible after services have been rendered. A court's position that attorneys not be paid until the end of litigation, in noncontingent fee cases, would almost certainly result in able lawyers in such a county refraining from representing clients in family law cases. Given the complexity of modern day family law litigation and the significance of this litigation to our society, courts should be doing everything they can to encourage, not discourage, able attorneys to handle family law cases.

It is a fact of life that attorneys representing clients in family law cases frequently do not receive payment of full and adequate compensation for the services they perform. The approach suggested by the trial court would make things even worse. It would compel the attorney to finance the litigation by deferring receipt of payment for services until months or years after they are performed, while the attorney would have to personally advance the costs of overhead attributable to the case. Even worse, it would require attorneys to advance from their own pockets sizable expenditures required as a matter of course in such litigation, such as expenses for depositions and experts. Banks and finance companies are licensed for the purpose of lending money; lawyers are not.

The kind of attitude expressed by the trial court is exactly the kind of judicial thinking criticized by Justice Gardner when he decried the fact that "Domestic relations litigation, one of the most important and sensitive tasks a judge faces, too often is given the low-man-on-the-totem-pole treatment . . . ." (*In re Marriage of Brantner* (1977) 67 Cal.App.3d 416, 422 [136 Cal.Rptr. 635].) Indeed, heeding Justice Gardner's criticism, most urban courts have established specialized family law trial departments in the years since *Brantner*. Additionally, the State Bar, with the express approval of the California Supreme Court, has recognized the importance and greatly enhanced the prestige of lawyers who specialize in family law by approving that field as worthy of designation as one of four certified specialities within the legal profession in California.

[3]Civil Code section 4370 provides in part: "(a) During the pendency of any proceeding under this part, the court may order any party, except a governmental entity, to pay such amount as may be reasonably necessary for the cost of maintaining or defending the proceeding and for attorneys' fees; and from time to time and before entry of judgment, the

discretion, and ordinarily will only be disturbed upon a showing of abuse of discretion. (*In re Marriage of Popenhager* (1979) 99 Cal.App.3d 514, 525 [160 Cal.Rptr. 379]; *In re Marriage of Janssen* (1975) 48 Cal.App.3d 425, 428 [121 Cal.Rptr. 701]; *In re Marriage of Gonzales* (1975) 51 Cal.App.3d 340, 344 [124 Cal.Rptr. 278]; *In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 113 [113 Cal.Rptr. 58] [disapproved on other grounds by *In re Marriage of Morrison* (1978) 20 Cal.3d 437, 453 (143 Cal.Rptr. 139, 573 P.2d 41)].) But, while the court has considerable latitude in fashioning or denying a pendente lite fee award its decision must reflect an exercise of discretion and a consideration of the appropriate factors. (See *In re Marriage of Cueva* (1978) 86 Cal.App.3d 290, 297-304 [149 Cal.Rptr. 918]; *In re Marriage of Fransen* (1983) 142 Cal.App.3d 419, 426-427 [190 Cal.Rptr. 885]; *In re Marriage of Popenhager, supra,* 99 Cal.App.3d 514, 525, Hogoboom & King, Cal. Practice Guide: Family Law I (1985) ch. 14; Attorneys Fees and Costs, § 14:23, p. 14-6.2.)

In exercising its discretion to award attorney fees under Civil Code section 4370 the trial court must consider the respective incomes and needs of the parties. (*In re Marriage of Popenhager, supra,* 99 Cal.App.3d 514, 525; *In re Marriage of Gonzales, supra,* 51 Cal.App.3d 340, 344.) "Where one spouse does not have the funds available to pay attorney's fees to prosecute a family law motion, the other spouse is able to pay, and the motion is made in good faith, it is an abuse of discretion to deny a request for attorney's fees to the needy spouse." (*In re Marriage of Kerry* (1984) 158 Cal.App.3d 456, 464 [204 Cal.Rptr. 660]; *Hunter* v. *Hunter* (1962) 202 Cal.App.2d 84, 92-93 [20 Cal.Rptr. 730].) "The basis for awarding attorney's fees is that each party must have access to legal representation in order to preserve all of his or her rights." (*In re Marriage of Barnert* (1978) 85 Cal.App.3d 413, 428 [149 Cal.Rptr. 616].)

Here the record is clear that before Judy's counsel could even present her argument the court summarily stated that it never awarded temporary attorney fees.[4] Thus, the court refused to consider the factors required by law, the respective incomes and needs of the parties. (*In re Marriage of Popenhager, supra,* 99 Cal.App.3d at p. 525.) The court also evidenced a complete disregard for Judy's need to retain skilled counsel to represent her interests in the resolution of the issues in this case, and the difficulties she would face finding adequate counsel who could afford to

---

court may augment or modify the original award for costs and attorneys' fees as may be reasonably necessary for the prosecution or defense of the proceeding or any proceeding related thereto, including after any appeal has been concluded."

[4]The court did indicate that as an exception to this rule it did award pendente lite attorney fees where there was no property of the marriage, the husband was "cash-rich," and the wife had "no cash at all."

defer all payment until a final resolution occurred. It has been said in the context of an award of attorney fees on appeal: "To tell a woman who wishes in good faith to appeal a judgment in a divorce action and who is without funds to pay necessary counsel fees that no such fees will be allowed except possibly on an application for a final decree *is practically equivalent to denying her the right to appeal* unless her attorney is willing to act without compensation or for the mere possibility that some attorney's fee may be awarded later." (*Hunter* v. *Hunter, supra,* 202 Cal.App.2d 84, 93; italics added.) This reasoning is even more applicable to a request for attorney fees and costs at the outset of a case. To deny Judy any sum for attorney fees during the course of her dissolution proceedings, when her independent income is $0, and the $500 per month for child and spousal support which she receives is insufficient to cover basic expenses, is to place her in the position of being unable to retain counsel or, in all probability, of retaining either inexperienced or incompetent counsel to represent her.

Dan claims Judy waived her right to seek a temporary order for *attorney fees,* by stipulating to a lower *support* award than she had originally requested and one which was apparently less than the court's guidelines for temporary support. This argument is meritless and goes against the policy of encouraging couples to reach negotiated settlements of property and support issues. The argument has absolutely no merit in a case such as this, where the amount stipulated for temporary support is inadequate for that purpose, and certainly does not provide the supported spouse with sufficient funds to employ counsel. Judy should not be punished for accepting a lower amount of support by treating her acceptance as an admission that Dan was unable to contribute to payment of her attorney fees. Such a result would only encourage parties to resist all attempts to compromise support issues out of the fear that they might forfeit any claim for attorney fees and costs.

Moreover, the fact that Judy had $500 per month available as a result of support payments should not have been considered by the trial court as being available for attorney fees. ■ A support award is made to defray support expenses, and should not be considered in determining financial ability to maintain a proceeding. (*In re Marriage of Jacobs* (1982) 128 Cal.App.3d 273, 288-289 [180 Cal.Rptr. 234]; *In re Marriage of Borson* (1974) 37 Cal.App.3d 632, 639 [112 Cal.Rptr. 432]; Hogoboom & King, Cal. Practice Guide: Family Law I (1985) ch. 14, Attorneys Fees and Costs, §§ 14:20.2-14:20.3, p. 14-6.1.) An exception might be appropriate if the amount of temporary support was sufficient, after payment of the living expenses of Judy and the child in her custody, for Judy to pay her own attorney fees and costs. Clearly it was not.

Dan also argues Judy failed to meet the burden of proof required for an award of attorney fees pendente lite in that she did not introduce sufficient evidence of her need *and* his ability to pay. This argument is absurd. Each party's income and expense declaration (Cal. Rules of Court, rule 1285.50) was executed under penalty of perjury and was before the court. However, Judy's counsel was effectively prevented from introducing evidence, from referring to the parties' income and expense declarations and from presenting any argument on the issue of attorney fees, by the court's interruption and summary decision. This can be easily corrected on remand.

In his memorandum of points and authorities in opposition to the request for pendente lite attorney fees Dan asserted that an award of pendente lite fees to Judy's attorney would result in a litigious approach to the case. He does not explain, however, why the fact his attorney had already been paid $500 and would receive payments for additional services at no less than $100 per month would not have the same effect. Judy should be awarded sufficient fees and costs, consistent with the income and expenses of the parties, so that she has the means to hire counsel with sufficient skill to contest the issues and protect her rights. (*Pope* v. *Pope* (1951) 107 Cal.App.2d 537, 540 [237 P.2d 312].) If Dan can afford to pay his own attorney according to the above agreement, the trial court should be able to fashion a pendente lite award of attorney fees and costs to assure Judy reasonably equal representation, including an order for installment payments. The court could retain jurisdiction for the trial judge to allocate or charge amounts paid on account of attorney fees and costs to the separate property of the parties or the community. (See *In re Marriage of Barnert*, *supra*, 85 Cal.App.3d 413; *In re Marriage of Jafeman* (1972) 29 Cal.App.3d 244 [105 Cal.Rptr. 483].)

The public policy of California strongly favors settlement as the primary means of resolving legal disputes. This is especially true in marital dissolution litigation where it is so clearly in the financial and emotional interests of the parties, especially where they have children, to reach an expeditious and final resolution of their dispute. This result can most easily and most rapidly be reached where each spouse has reasonable and able counsel representing them with some assurance they will be fairly compensated for their services, consistent with the financial circumstances of the parties.

Where the wife is as financially disadvantaged as compared to the husband as is true here, "The obligation to provide for the wife is not subordinate to those owed other persons. If necessary the husband must invade his investments to provide the wife with the sinews to conduct her litigation with him." (*Rosenthal* v. *Rosenthal* (1961) 197 Cal.App.2d 289, 298 [17 Cal.Rptr. 186].) Money is the mother's milk of more than politics.

The trial court's failure to exercise discretion in denying Judy's motion for pendente lite attorney fees is an abuse of discretion and constitutes reversible error.

The order is reversed, and the case remanded to the trial court for rehearing on the question of an award for temporary attorney fees and costs. Judy shall recover her costs on appeal including, in an amount deemed appropriate by the trial court, attorney fees.

Low, P. J., and Haning, J., concurred.