[No. A048140. First Dist., Div. Two. Dec. 18, 1991.]

In re the Marriage of CHARLES H. SEAMAN II and PATTI ANNE MENJOU.
CHARLES H. SEAMAN II, Appellant, v.
PATTI ANNE MENJOU, Respondent.

COUNSEL

Robert D. McGuiness for Appellant.

Eileen Preville for Respondent.

OPINION

**KLINE, P. J.**—Charles H. Seaman II appeals from an order of the family law court in a dissolution action awarding his former wife attorney's fees in a separate juvenile court action, *In re Marjorie S.* (Super. Ct. Alameda County, 1991, Nos. 143621/143622; A046829). He contends the trial court lacked jurisdiction to order such fees and the award denied him procedural due process.

## STATEMENT OF THE CASE AND FACTS

On September 23, 1987, appellant filed a petition for the dissolution of his marriage to respondent, Patti Sue Menjou. The events which preceded the dissolution were the subject of an earlier appeal from a juvenile court action that resulted in the establishment of dependencies for the couple's two children, J. and H. In May of 1987, J., then three years old, related a dream which led respondent to believe appellant had molested her. Respondent, who had herself been molested as a child, reported the possible molestation to the Alameda County Children's Protective Service (CPS) in June. CPS closed its case in July, after which respondent made additional reports in July and September but the case was not reopened, the agency noting concerns that respondent had contaminated the child's statement due to her obsession with molestation issues.

Pursuant to the parties' agreement, Dr. Linda Campbell began to assess the family in June of 1987. Campbell was unable to determine whether J. had been molested and was very concerned that respondent's emotional involvement in the situation was causing the child harm. She last saw the family in October because respondent no longer wanted her to work on the case.

In November 1987, the court appointed Dr. Ricardo Hofer, a clinical psychologist, to assess the family and make recommendations regarding custody and visitation. Hofer concluded there was a low probability J. had actually been sexually molested and a probability respondent was overidentifying or merging with J., and felt respondent's affect was hurting the children as much as any possible molestation. Pursuant to Hofer's evaluation, the court ordered joint physical custody of the children, with the children spending two nights at a time with each parent on a rotating basis.

In June 1988, CPS reopened its investigation because J. was continuing to make statements regarding molestation to her day care provider, the emergency response worker and the child welfare worker. A petition was filed on August 6, 1988, and amended on February 24, 1989, alleging that J. and H. came within the provisions of Welfare and Institutions Code section 300 in that appellant had sexually molested and frightened the minors and respondent was causing them emotional damage because of her preoccupation with the molest and was unable to properly care for them. After a jurisdictional hearing which continued over the course of 16 court days, the juvenile court found that J. was suffering or at substantial risk of suffering serious emotional damage as a result of appellant having sexually molested her and threatened her in various ways if she told of the molestation; respondent was preoccupied with the sexual molestation and her repeated discussions of

sexual behavior in the minors' presence was causing them damage; and H. had suffered extreme anxiety from appellant's wearing frightening masks in his presence. At a dispositional hearing on May 31, the court declared the minors dependent children of the juvenile court, removed them from their parents' custody and committed them to the Alameda County Social Services Agency for supervision in respondent's home with regular visitation for appellant.

On July 6, 1989, respondent's attorney in the dependency proceeding, Christopher F. Emley, filed a memorandum of law in the dissolution action seeking to have appellant pay respondent's fees and costs in the dependency action. The court found respondent had incurred legal expenses exceeding $50,000 in the dissolution and dependency actions. Finding that both parties were to blame for the harm to the children but that respondent's flowed from and was outweighed by appellant's, and considering the parties relative financial positions, the court ordered appellant to contribute $40,000 toward payment of the fees, of which $25,680 was for Emley's fees.[1] Appellant filed a timely notice of appeal on December 11, 1989.

Meanwhile, appellant had appealed to this court from the judgment in the dependency action. In an unpublished opinion, we concluded that the trial court erred in admitting certain testimony without requiring a foundation pursuant to the principles of *People* v. *Kelly* (1976) 17 Cal.3d 24 [549 P.2d 1240] and *Frye* v. *United States* (D.C. Cir. 1923) 293 F. 1013 and, finding the case "extraordinarily close," reversed the judgment.

## DISCUSSION

The question we are called upon to address in this appeal is whether a trial court in a dissolution action may order one spouse to pay a portion of the other's attorney's fees incurred in the course of defending a dependency proceeding under Welfare and Institutions Code section 300. Appellant contends the trial court erred in concluding it could make such an order either under the authority of Civil Code section 4370[2] or according to the principle that a wrongdoing spouse may be held solely responsible for community debts incurred as a result of his or her wrongdoing.

[1]The court's award of $14,320 for the fees of respondent's attorney in the dissolution action, Eileen Preville, are not contested in this appeal.

[2]All further statutory references will be to the Civil Code unless otherwise specified.

 ██ ██ (*In re Marriage of Stitt* (1983) 147 Cal.App.3d 579 [195 Cal.Rptr. 172].)[3]

## I.

 Section 4370, subdivision (a), provides in pertinent part as follows: "During the pendency of any proceeding under this part, the court may order any party, except a governmental entity, to pay such amount as may be reasonably necessary for the cost of maintaining or defending the proceeding and for attorneys' fees; and from time to time and before entry of judgment, the court may augment or modify the original award for costs and attorneys' fees as may be reasonably necessary for the prosecution or defense of the proceeding *or any proceeding related thereto*, including after any appeal has been concluded." (Italics added.)

By its reference to proceedings "under this part," section 4370 specifies that it applies to proceedings under the Family Law Act (FLA). (*Brink* v. *Brink* (1984) 155 Cal.App.3d 218, 223 [202 Cal.Rptr. 57].) The language italicized above, however, expands the coverage of the statute to "any proceeding related to" a proceeding under the FLA. Since a proceeding under Welfare and Institutions Code section 300 falls under the Juvenile Court Law rather than the FLA, an award of fees under section 4370 is appropriate in the present case only if a dependency proceeding may be considered "related" to the dissolution action under the FLA.[4]

---

[3]Respondent contends appellant's failure to request a statement of decision is fatal to his appeal. Unlike the cases respondent relies upon (*In re Marriage of Ditto* (1988) 206 Cal.App.3d 643, 646-648 [253 Cal.Rptr. 770]; *In re Marriage of Jones* (1990) 222 Cal.App.3d 505, 515 [271 Cal.Rptr. 761]; *In re Marriage of Hebbring* (1989) 207 Cal.App.3d 1260, 1274 [255 Cal.Rptr. 488]; *In re Marriage of Green* (1989) 213 Cal.App.3d 14, 20 [261 Cal.Rptr. 294]), in which the record contained no explanation of the final judgment, here the judgment sets forth the reasons for the award. In these circumstances, absence of a statement of decision does not hamper our review. (See *In re Marriage of Fingert* (1990) 221 Cal.App.3d 1575, 1580 [271 Cal.Rptr. 389]; *In re Marriage of Powers* (1990) 218 Cal.App.3d 626, 634 [267 Cal.Rptr. 350].)

[4]In his concurring opinion, Justice Peterson concludes that fees may be awarded under section 4370 only for services incurred in proceedings under the Family Law Act because he believes this was the purpose of the State Bar, which sponsored the 1951 legislation that became section 4370. There is, however, no indication in the legislative history whatsoever that the Legislature shared the State Bar's restrictive view. *Sales* v. *Stewart* (1933) 134 Cal.App. 661, 664 [26 P.2d 44], which Justice Peterson relies upon for the proposition that the views of the State Bar may be considered as part of the legislative history, has been strongly criticized and rarely followed. (Note, *Nonlegislative Intent as an Aid to Statutory Interpretation* (1949) 49 Colum.L.Rev. 676, 684; Note, *California Legislative Materials* (1952) 4 Stan.L.Rev. 367, 372.) Our opinion in *American Tobacco Co.* v. *Superior Court* (1989) 208 Cal.App.3d 480 is not consistent with *Sales*, as Justice Peterson suggests. In *American Tobacco*, our assessment of legislative purpose relied chiefly on legislative staff analyses.

We find little guidance on this question in the case law. The cases offered by the parties are not helpful. *Brink* v. *Brink, supra,* 155 Cal.App.3d at p. 223, held fees properly denied to a former spouse who moved to vacate a community property award in an independent action in equity because such an action was not one under the FLA; the court did not discuss section 4370's reference to "related" proceedings. *Guardianship of Paduano* (1989) 215 Cal.App.3d 346, 350-352 [263 Cal.Rptr. 589], found fees appropriate where a guardianship proceeding was consolidated with a dissolution action involving the question of custody of the same child, again without discussion of the language regarding related proceedings. *In re Marriage of Green, supra,* 213 Cal.App.3d 14, 28, footnote 8, simply stated that whether other proceedings are "related" to a dissolution within the meaning of section 4370 is a question of fact for the trial court without expressing a view on the issue.

The few cases we have discovered that directly address the "related" proceeding language do not interpret it in a manner that provides us guidance but simply make judgment calls as to whether the particular actions involved were "related" to the underlying divorce. Thus, in *Gottlieb* v. *Gottlieb* (1957) 155 Cal.App.2d 715 [318 P.2d 763], after a divorce and property settlement agreement, the former wife filed in the divorce action a writ of execution stating her former husband owed certain sums of money. The former husband filed an action for malicious abuse of process alleging that his former wife had known he was not in arrears when she sought the writ. The court held fees inappropriate because, assuming all the allegations of the complaint for malicious abuse of process were true, the action was "based solely on the alleged tortious conduct of the former wife" and therefore was not "related to" and did not "[grow] out of" the divorce action. (*Id.,* at p. 719.) In *Crook* v. *Crook* (1960) 184 Cal.App.2d 745 [7 Cal.Rptr. 892], a former wife was awarded fees on the former husband's appeal from a judgment disposing of certain property the couple had held as joint tenants. In response to the former husband's argument that the divorce court had no power to dispose of property held in joint tenancy, the appellate court found

---

Pointing out that the statement of a special interest group "is ordinarily an unreliable indication of the purpose of legislation affecting the interests of that group" (*id.,* at p. 488), we relied in part on such a statement only because it "concede[d] a purpose inimical to the goals of the interest group" (*ibid.*) and was therefore uncommonly reliable. There is in the present case no analogous statement against interest. Moreover, even if the Legislature could be assumed to have contemplated that the statute would ordinarily apply to costs and fees incurred in domestic relations proceedings, this expectation would not at all be frustrated by the broader application we feel warranted by the very language of the statute. Finally, the parade of horribles Justice Peterson predicts will result from our interpretation of the language of the statute is, in our view, farfetched.

the issue properly joined and determined in the divorce action and, accordingly, fees appropriate under the "relating to" language. (*Id.*, at pp. 749-750.)[5]

"Relate" is defined in Webster's New Collegiate Dictionary (1977) as "to show or establish logical or causal connection between" or "to have relationship or connection: Refer."[6] This definition is so general that precise enumeration of the types of proceedings within the purview of section 4370 is impossible; a logical connection between a given proceeding and a FLA action might be found by considering a variety of factors including the type and function of the proceeding, parties to the proceeding, factual and legal matters at issue and motives for the litigation. The generality of the statutory language thus leaves a wide area for exercise of the trial court's discretion in determining whether an action is "related" to a FLA proceeding.

■ A motion for attorney's fees in a marital dissolution action is left to the sound discretion of the trial court and will not be overturned absent an abuse of that discretion. (*In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 768 [691 P.2d 1020].) ■ In exercising the discretion given by section 4370, however, a court must be guided by the fundamental rule that in construing a statute a court " ' "should ascertain the intent of the Legislature so as to effectuate the purpose of the law." ' " (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [621 P.2d 856], quoting *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [514 P.2d 1224].) ■ Accordingly, the question whether a non-FLA proceeding is "related" to one under the FLA such that attorney's fees may be granted must depend on whether an award of fees in the non-FLA proceeding would serve the purpose of section 4370.

■ The purpose of an award under section 4370 is "to provide one of the parties, if necessary, with an amount adequate to properly litigate the controversy." (*In re Marriage of Sullivan, supra,* 37 Cal.3d 762, 768; *In re Marriage of Janssen* (1975) 48 Cal.App.3d 425, 428 [121 Cal.Rptr. 701].) " 'The basis for awarding attorney's fees is that each party must have access to legal representation in order to preserve all of his or her rights.' " (*In re Marriage of Hatch* (1985) 169 Cal.App.3d 1213, 1219 [215 Cal.Rptr. 789],

[5]*Gottlieb* v. *Gottlieb, supra,* 155 Cal.App.2d 715 and *Crook* v. *Crook, supra,* 184 Cal.App.2d 745, construed former section 137.3, predecessor to section 4370, which authorized fees in actions for "divorce" and proceedings "relating thereto."

[6]The definitional terms "connection," "relationship," and "refer" are each defined by reference to each other: "Relationship" is defined as "the state or character of being related or interrelated: Connection"; "refer" is defined as "to have relation or connection: Relate"; "connection" is defined as "the act of connecting: the state of being connected: as . . . a causal or logical relation or sequence."

quoting *In re Marriage of Barnert* (1978) 85 Cal.App.3d 413, 428 [149 Cal.Rptr. 616].) Thus, a trial court must consider the respective incomes and needs of the parties, including all evidence concerning income, assets and abilities, in exercising its discretion to award attorney's fees. (*In re Marriage of Sullivan, supra,* 37 Cal.3d at p. 768; *In re Marriage of Wolfe* (1985) 173 Cal.App.3d 889, 893 [219 Cal.Rptr. 337]; *In re Marriage of Hatch, supra,* 169 Cal.App.3d at p. 1219.)

■ In keeping with the purpose of section 4370, the most obvious function of the "related" proceeding language is to allow a trial court to fully ensure both parties' ability to maintain or defend a FLA action. For example, by authorizing fees in cases related to FLA actions as well as in those directly under the FLA, section 4370 enables a trial court to ensure that an appropriate degree of financial parity between the parties is not lost by a party's litigation of matters which could have been part of the FLA action in an independent suit. (See *In re Marriage of Green, supra,* 213 Cal.App.3d at p. 28, fn. 8 [noting that numerous actions involving parties to dissolution or their attorneys might be "related" for purposes of section 4370].) Such suits might be "related" in that they involve the same or similar subject matter to the FLA action or, even if unrelated in a factual sense, might fall within the purview of the statute because of their effect on the FLA action. Thus, the statute enables a trial court to prevent a spouse with greater financial resources from harassing or coercing the less advantaged spouse into submission in the FLA case by forcing him or her to defend other lawsuits; such independent suits are "related" within the meaning of section 4370 because they are intended to produce some result in a FLA case.

At the same time, not all actions which are in some way related by subject matter to a FLA action can properly be viewed as within the reach of section 4370. For example, during the pendency of a dissolution proceeding, the husband finds the wife with her lover, becomes involved in a physical altercation and is subsequently sued by the lover for assault. Although the assault case arises out of the dissolution in a general way, the husband's act is so independent of the dissolution that no purpose of section 4370 would be served by having the wife contribute toward his legal fees (assuming the wife to be the party with greater financial resources).

In the present case, the trial court found that the juvenile court proceedings "were simply an extension of the Family Law action and that, had the matter not been litigated in Juvenile Court, it would have been in this court." This view ignores fundamental differences between dissolution actions involving the issue of custody of minor children and dependency proceedings under Welfare and Institutions Code section 300. In a dissolution action,

parents and other interested parties invoke the court's jurisdiction to determine rights to custody and visitation in accordance with the best interests of the child. (§§ 4351, 4351.5, 4600; *Burchard* v. *Garay* (1986) 42 Cal.3d 531, 535 [724 P.2d 486, 62 A.L.R.4th 237].) The child is generally not ensured representation in the proceeding but must depend upon others to protect his or her interests. (*In re Anne P.* (1988) 199 Cal.App.3d 183, 194 [244 Cal.Rptr. 490].)

In a dependency proceeding, by contrast, the state acts to protect children who have been or are at risk of being harmed in specific ways enumerated in Welfare and Institutions Code section 300. (See *In re Benjamin D.* (1991) 227 Cal.App.3d 1464, 1469-1470 [278 Cal.Rptr. 468].) While a dependency proceeding may arise out of facts which also lead to a dissolution action, as in the present case, there is no inherent link between the two: A dependency petition may be filed against parents who have no thought of dissolving their marriage. The parents themselves may have nothing to do with the filing of the petition and, as here, even when one parent instigates the filing of the petition, allegations may be made against both parents. The fact that a dependency petition is filed by a representative of a child protective agency and that the filing is preceded by investigation to determine cause for the action " 'insulate the proceedings from self-interest and petty interferences which can pervade parental custody disputes.' " (*In re Anne P., supra*, 199 Cal.App.3d at p. 194, quoting *In re William T.* (1985) 172 Cal.App.3d 790, 798 [218 Cal.Rptr. 420].)

The child is a party to a dependency proceeding and is entitled to representation by counsel. (Welf. & Inst. Code, § 317; *In re Anne P., supra*, 199 Cal.App.3d 183, 194; *In re William T., supra*, 172 Cal.App.3d 790, 798.) The proceeding may ultimately result in parents' loss of custody and parental rights and the governing statutes accordingly set out careful protections including notice and a due process hearing for parents (*Walker* v. *Superior Court* (1988) 47 Cal.3d 112, 134 [763 P.2d 852]), mandatory appointment of counsel for indigent parents whose children may be placed in out of home care (§ 317, subd. (b)) and discretionary appointment of counsel for any parent unable to afford counsel (Welf. & Inst. Code, § 317, subd. (a)), periodic reviews of the children's status (Welf. & Inst. Code, § 366) and mandatory services aimed at reunification of the family (Welf. & Inst. Code, § 361.5) which are not required in superior court proceedings. (§ 4609; see *In re Clarence I.* (1986) 180 Cal.App.3d 279, 281-283 [225 Cal.Rptr. 466].)

Finally, juvenile court proceedings take precedence over other proceedings affecting the custody of children so that once a minor has been adjudged a dependent child of the juvenile court no other superior court may entertain

proceedings regarding the child's custody until the child is no longer a dependent of the juvenile court. (Welf. & Inst. Code, § 304.) ▉ Juvenile court dependency orders supersede preexisting domestic relations custody orders and domestic relations courts may not enforce orders that conflict with juvenile court orders. (*In re Anne P., supra,* 199 Cal.App.3d 183, 193-197; *In re William T., supra,* 172 Cal.App.3d 790, 797-800; Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 1991) ¶ 7:21, pp. 7-43-7-44.)[7]

▉ Section 4370, as explained above, was meant to allow both spouses to properly litigate actions under the FLA, in this case an action for dissolution and child custody. Since the dependency statutes establish a self-contained scheme under which the state acts to prevent particular types of harm to children, not tied to and taking precedence over any other means of determining custody, and differing from family law custody disputes in focus, power of the court and available remedies, to require one spouse to pay for fees incurred by the other in defending against a dependency petition simply would not serve section 4370's purpose of enabling spouses to properly litigate matters arising from the dissolution of their marriage. This is especially true since the Welfare and Institutions Code contains its own provisions to ensure parents' representation by giving courts discretion to appoint counsel for parents who are unable to afford counsel. (Welf. & Inst. Code, § 317.) Accordingly, the trial court erred in determining that section 4370 authorized an award of fees for respondent's attorney in the dependency proceeding and thus abused its discretion in requiring appellant to contribute toward those fees.

We do not mean to suggest that dependency or other proceedings ordinarily unrelated to FLA proceedings may not become "related" by virtue of the motives of the party initiating the proceeding in question. For example, where a parent dissatisfied with the ruling of a domestic relations court manages to prevail upon the relevant authorities to file a dependency petition in order to harass the other parent or to otherwise avoid the valid order of the

---

[7]The court in *In re Brendan P.* (1986) 184 Cal.App.3d 910 [230 Cal.Rptr. 720], expressed the view that it would be improper for a juvenile court to assume jurisdiction over an issue which has previously been litigated in a family court action. It has been questioned whether this exception to the general rule is consistent with Welfare and Institutions Code section 304, which became operative after jurisdiction was taken in those cases (Hogoboom & King, *supra,* § 7:21-7:21.3, pp. 7-43-7-44), although the exception may survive on a theory that juvenile court proceedings are paramount only if jurisdiction is properly assumed and a juvenile court may not properly exercise jurisdiction if the precise issue has already been litigated in a FLA action. (*Id.,* § 7:21.3.) *In re Benjamin D., supra,* 227 Cal.App.3d at p. 1471, disagreed with *Brendan P.,* holding that to make jurisdiction of the juvenile court dependent on the nature of family law litigation would create the potential of having private litigation frustrate the purposes of section 300. We need not determine this issue as the parties in the present case have not questioned the propriety of the juvenile court's jurisdiction.

domestic relations court (see *In re Brendan P., supra*, 184 Cal.App.3d 910, 919 [juvenile court action prompted by mother immediately after orders for father's visitation entered in family law court]), the dependency might properly be considered "related" within the meaning of section 4370.[8] This, however, is not such a case. There is no suggestion in the record that appellant instigated the dependency proceeding; on the contrary, appellant maintains that respondent caused CPS to reopen its investigation by her "constant prodding of [J.] coupled with her incessant threats to sue CPS." Since appellant's financial resources far exceed respondent's, we are not faced with a financially secure spouse attempting to harass or coerce the less well-off one. If respondent instigated the dependency proceeding for an improper motive, a point we need not decide, her conduct could not render the dependency proceeding "related" within the meaning of section 4370. To find a proceeding "related" on the basis of such conduct by a spouse without financial resources would defeat the purpose of the statute by enabling that spouse to harass or coerce the spouse who would be liable for fees.

## II.

The trial court's reliance upon the principles of *In re Marriage of Stitt, supra,* 147 Cal.App.3d 579 as a basis for the award of attorney's fees

---

[8]Although they have no direct bearing on the question of attorney's fees at issue here, the cases involving conflicts of jurisdiction between juvenile and domestic relations courts illustrate how the facts of a given case can make the two types of proceedings seem more or less distinct. *In re Brendan P., supra,* 184 Cal.App.3d 910, which stated in dicta that the juvenile court cannot relitigate the precise issue previously adjudicated in a family court action, noted that the dependency petition had been filed, upon the mother's prompting, the day after the family court's ruling and that the juvenile court action as a factual matter did not protect the children from the "pervasive 'self-interest and petty interferences [characteristic of] parental custody disputes.' " (*Id.,* at p. 919.)

By contrast, in *In re William T., supra,* 172 Cal.App.3d 790, 797-800, the father contacted the child protective services agency in his county of residence while awaiting a hearing set two months later in a custody dispute pending in a different county, after his child reported certain events had occurred during visitation with her mother. CPS investigated and filed a dependency petition 11 days later. After the juvenile court proceeding, the family law court entered orders conflicting with those of the juvenile court. The majority opinion held the juvenile court's jurisdiction paramount over that of other superior courts even if acquired later in time, focussing on the unique characteristics of a juvenile court action in which the state, as *parens patriae,* acts to protect a child.

Similarly, in *In re Benjamin D., supra,* 227 Cal.App.3d 1464, a dependency petition was filed after investigation by CPS of a mother's report of abuse by the father. A family law court had previously been presented with evidence of abuse on a motion to modify visitation but had refused to consider evidence of abuse predating the judgment of dissolution. The appellate court held the family law proceeding could not prevent consideration of the evidence by the juvenile court, stressing that family law and juvenile proceedings have different purposes and parties and that the juvenile court is required by statute to take jurisdiction whenever a minor comes within the provisions of section 300. (*Id.,* at pp. 1469-1472.)

was also improper. In *Stitt*, a wife who had been convicted of embezzling from her employer argued that attorney fees incurred during her marriage for her defense should be regarded as a community debt and paid from the community property as a whole rather than from her share of the community property. The court recognized that under ordinary community property rules the community could be liable for the debt[9] but, under equitable principles, found it appropriate in settling marital rights at the time of dissolution of the marriage to assign the full responsibility for the embezzlement to the wife. (*Id.*, at pp. 587-588.) The court stated: "[T]he court had conclusive evidence of recently committed criminal activity which culminated in financial consequences at the time the marriage was coming to an end. No principle of law required the innocent spouse to share the loss created by the other party. Husband had not waived his right to receive his share of the community property free from any loss attributable to wife's separate conduct. Therefore it was proper for the court to make orders which carried out the law's intention that only responsible participants in crime or tort bear the loss." (*Ibid.*)[10]

In *Stitt*, the wife sought to have her husband share in the costs of litigation which arose from her independent actions; the essence of the holding is that an innocent spouse may be relieved of his or her share of a community obligation arising solely out of the act of the other spouse. In the present case, respondent is not seeking to have her attorney's fees treated as a community obligation but to avoid all cost to herself and have appellant bear the full burden of the fees directly. This is simply not a situation to which *Stitt* applies. Additionally, unlike the husband in *Stitt*, respondent was not a wholly innocent spouse: The dependency petition was sustained in part on the basis of allegations against her.[11]

---

[9]Under former section 5116 (and present § 5120.110), the community is liable for contracts made by either party during marriage. (*Stitt, supra*, 147 Cal.App.3d at p. 587.) Under section 5122, which states that a married person is generally not liable for damages caused by a tortfeasor spouse, because the husband did not participate in the embezzlement and there was no showing her actions benefitted the community, the attorney's claim had to be satisfied first from the wife's separate property and then from the community property. When a spouse's liability is based upon an act or omission which occurred while the spouse was performing an activity for the benefit of the community, the liability must be satisfied first from community property and second from the spouse's separate property. (§ 5122.)

[10]The court in *In re Marriage of Hirsch* (1989) 211 Cal.App.3d 104 [259 Cal.Rptr. 39] criticized *Stitt* to the extent it held negligent conduct benefitting the community could justify characterizing a debt as a separate obligation although it agreed with *Stitt*'s conclusion on the facts of that case.

[11]In view of our conclusions above, we need not discuss appellant's additional contention that the trial court's order denied him procedural due process.

The judgment is reversed insofar as it awards respondent attorney's fees for the dependency proceeding.

Smith, J., concurred.

**PETERSON, J.**—I concur in the result reached by the majority. I write separately to disavow the majority's suggestion in dictum that the Legislature, in enacting Civil Code[1] section 4370 and predecessor statutes incorporated therein, authorized judges and commissioners in family law actions to award attorney fees and costs incurred in other independent actions which deal with issues "related" to issues arising in dissolution or annulment cases.

I would reach the holding of the majority because: (1) The "proceeding related thereto" language of section 4370 was intended to mean proceedings postjudgment and pendente lite growing out of the family law action itself; and (2) the sole bases for determining the liability of one party in a family law case to pay costs and fees therein to the other are the respective contemporaneous needs and financial condition of each party.

A. *Relevant Legislative History*

The majority correctly finds that the mere analysis of the "proceeding related thereto" language of section 4370 (and particularly the word "related") results in conclusions of such generality that ascertaining the meaning of the phrase by that method is impossible.

However, my colleagues, with the majority of courts commenting on the language of section 4370, have failed to properly analyze the purpose and legislative history of this statute and its predecessors in interpreting the intent, purpose, and function of the "proceeding related thereto" language.

Further, the majority's conclusion, that "The generality of the statutory language thus leaves a wide area for exercise of the trial court's discretion in determining whether an [independent] action is 'related' to a [Family Law Act (Civ. Code, §§ 4000-5317) (FLA)] proceeding" (maj. opn., *ante*, p. 1496), assumes a legislative intent which never existed on passage of the statute in question, while ignoring cardinal rules of statutory construction which precedent commands we follow. This majority language now fastens an interpretation on the Legislature's action, almost four decades after the language at issue was introduced into the Civil Code, which the Legislature has never subsequently evinced it so intended.

---

[1] Unless otherwise indicated, all subsequent statutory references are to the Civil Code.

### 1. *Divining Legislative Intent*

We have heretofore said: "In determining what the Legislature intended we are bound to consider not only the words used, but also other matters, 'such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy and contemporaneous construction. . . .' [Citation.]" (*American Tobacco Co.* v. *Superior Court* (1989) 208 Cal.App.3d 480, 486.) We are further obligated to consider, when determining legislative intent, the conditions which prompted the legislative enactment. (*People* v. *Fair* (1967) 254 Cal.App.2d 890, 893 [62 Cal.Rptr. 632].)

Where the State Bar of California sponsors and urges passage of legislation enacted into law, as it did here, the Bar's report, discussion, and comments on its legislative proposal are valuable interpretive aids generating the reasonable assumption that the Legislature adopted the statute or amendment it enacts consistent with the expressed State Bar purpose. (*Sales* v. *Stewart* (1933) 134 Cal.App. 661, 664 [26 P.2d 44].) This principle is particularly applicable where, as here, Assembly Bill No. 2438 (Stats. 1953, ch. 620, § 1, p. 1864, hereafter A.B. 2438),[2] by which the language we must consider became law, as introduced under the bar's sponsorship, was passed by both houses and signed by Governor Warren without any amendment whatsoever. (A. B. 2438, Assem. Final Hist. (1953 Reg. Sess.) p. 763.)

### 2. *The Prior Law*

A brief examination of the law as it existed prior to 1953 is necessary to assist in identifying "the evils to be remedied" by A.B. 2438.

As amended in 1941, former section 137 provided, inter alia: "During the pendency of any such [divorce] action the court may, in its discretion, require the husband or wife . . . to pay . . . as attorney's fees any money necessary for the prosecution of the action . . . ." (Stats. 1941, ch. 1038, § 1, pp. 2686-2687.)

From the latter part of the 19th century to 1950, a line of cases held that an attorney fees application, made pursuant to section 137 *after* the subject legal services were rendered in a divorce action, should be rejected as untimely. (See, e.g., *Kohn* v. *Kohn* (1950) 95 Cal.App.2d 722, 723-724 [214 P.2d 80] [This court (Division Two) referred to "the settled rule that [under

---

[2]This legislation in 1953 amended then-section 137.3, which was first added to the Civil Code in 1951. (Stats. 1951, ch. 1700, § 4, p. 3911.) A.B. 2438, inter alia, added the "proceeding related thereto" language to section 137.3, now incorporated in section 4370.

the law as it then stood] counsel fees may not be allowed where the motion therefor is not made until after the services have been performed."]; accord, *McClure* v. *Donovan* (1948) 86 Cal.App.2d 747, 748 [195 P.2d 911] ["The court is not empowered [under then-existing law] to make an award to the wife except upon a finding of necessity [citation] and necessity does not exist when the services have already been rendered. [Citations.]"]; cf. *Stampfli* v. *Stampfli* (1921) 53 Cal.App. 126, 132 [199 P. 829] [Attorney fees are granted solely to provide a wife with the services of counsel in the future.]; *Lacey* v. *Lacey* (1895) 108 Cal. 45, 46 [40 P. 1056] ["The allowance [of attorney fees] was for past services, and, under the circumstances, was clearly not 'necessary to enable the wife . . . . to prosecute . . . . the action'; and . . . it is erroneous."].)

These cases had for decades placed litigants in divorce cases, and particularly their lawyers, in an obvious and disturbing dilemma. If a client/spouse with no funds needed immediate legal services to forestall the other spouse, for example, from disposing of community property or to obtain a temporary restraining order to preclude injury to the client or the client's children, neither the lawyer nor the client could receive payment for those services from the adverse spouse (usually the husband) unless an order for payment of *future* services and costs was *first* obtained, or a stipulation was entered for the court's consideration of such fees and costs at trial. If, in the superior interests of the client, emergency conditions dictated the professional performance of such services in advance of securing either an order against the adverse spouse to pay for the same, or the appropriate stipulation, the rule of *Kohn* and *McClure* applied. No "necessity" existed for payment for past performed attorney services, regardless of the ability of the other spouse to pay. The inequity and unfairness of this archaic rule were obvious to all.[3]

### 3. *The Legislative Proposals of the State Bar*

Legislative change was the obvious method of rectifying this rule; and the State Bar first undertook this task in 1951 by proposing the addition of a new section 137.5, to read as here pertinent: "Upon application, the court may in

---

[3]Attorney fees in annulment of void (present §§ 4400-4401) and voidable (present §§ 4425-4429) marriages, now governed by section 4456, were dealt with by former section 87 which, as pertinent, read: "The court shall have power to grant attorneys fees . . . as provided by Section 137" in annulment actions to the party innocent of fraud or wrongdoing generating grounds for annulment. (Stats. 1947, ch. 951, § 1, p. 2220.) Present section 4456 relating to payment of attorney fees and costs in annulment actions allows them "in accordance with Section 4370 . . . ."

Since former section 137, in force at the time *Kohn, supra*, and like cases were decided, then applied to *both* divorce and annulment cases, the same principle extended to annulment actions, i.e., no attorney fees award would be granted if requested *after* completion of the legal services for which compensation was sought.

its discretion at any time thereafter increase the original award, if any, for costs and attorney's fees in such amount as may be necessary and reasonable for the prosecution or defense of the action . . . and in determining the amount of such increased costs and attorney's fees, the *Court may consider costs theretofore expended and legal services theretofore performed* . . . ." (Com. Reps., Administration of Justice (1951) 26 State Bar J. 187, § 6, p. 193, italics added.) The bar characterized this proposed legislation as providing "that award for attorneys' fees or costs may include fees for services rendered or costs incurred *prior* [*to*], as well as subsequent to, order of court therefor." (*Id.*, § (C), p. 188, italics added.)

The Legislature, however, in the 1951 session simply rewrote section 137, transferring its provisions for costs and attorney fees to a new statute, section 137.3, the predecessor of section 4370. The bar's proposal, that new section 137.3 provide for the award of fees for services rendered and costs expended in domestic relations cases *prior* to application therefor, was *not* explicitly set forth in the 1951 enactment of section 137.3. The statute as finally adopted read: "During the pendency of any action for divorce or for separate maintenance . . . , the court may order the husband or wife . . . to pay such amount as may be reasonably necessary for the cost of maintaining or defending the action and for attorney's fees." (Stats. 1951, ch. 1700, § 4, p. 3911.)[4]

The State Bar returned to the Legislature in 1953 on this subject as part of its affirmative legislation program for that year, sponsoring amendments to section 137.3 which it characterized as its "final text of a bill on *past services* in *domestic relations matters*," which became A.B. 2438. (Com. Reps., Administration of Justice (1953) 28 State Bar J. 256, § (B), p. 269, italics added.)

A.B. 2438, inter alia, added this language to section 137.3 (now § 4370): "During the pendency of *any action* for annulment . . . and of any action for divorce or for separate maintenance, or for the support . . . of children, upon an order to show cause or motion, and if such relief is requested in the complaint . . . , the court may order [payment as] . . . reasonably necessary . . . for [costs] . . . and for attorney's fees[] . . . and before entry of judgment . . . may augment or modify the original award, if any, for costs and attorney's fees *as may be reasonably necessary for the prosecution*

---

[4]The 1951 version of section 137.3 generated authority focusing on its "[d]uring the *pendency* of any action" language. For example, a divorce action was found to be "pending" where the trial court was to determine whether payments, ordered to be made following agreement of the parties and entry of a judgment of divorce, were alimony and subject to modification; hence, the court could award wife attorney fees. (*Dexter* v. *Dexter* (1954) 42 Cal.2d 36, 44 [265 P.2d 873].)

*or defense of the action or any proceeding relating thereto.* In respect to services rendered after the entry of judgment . . . , the court may award such costs and attorney's fees as may be reasonably necessary to maintain or defend any *subsequent proceeding therein* . . . ." (Stats. 1953, ch. 620, § 1, p. 1864, italics added.)

The bar announced to its membership that A.B. 2438 would authorize "an award for past services [in domestic relations matters] and costs, including services rendered and costs incurred prior to the filing of the complaint." (Com. Reps., Administration of Justice (1953) 28 State Bar J. 256, § (B), p. 269.) By way of further explanation of that bill, the bar said: (1) The award could be augmented or modified; (2) fees and costs had to be requested in the appropriate pleading as a condition to order to show cause or motion for such fees and costs; (3) allowances for costs and services *prior* to judgment must be finalized by that time; (4) allowances for costs and services subsequent to judgment (i.e., "in connection with an appeal, or in later enforcement proceedings") would be made on order to show cause or motion; (5) the basis for allowance of fees and costs remained measured by reasonable necessity; and (6) the amendments continued to leave awards of fees and costs to the discretion of the trial court—not compelling the court to do so, but empowering it to so act. (*Ibid.*)

The State Bar, having sponsored A.B. 2438, which passed both houses without a single amendment, confirmed the purpose of its sponsorship in a communication, through its secretary and counsel, to Governor Warren dated April 28, 1953, as follows: "[A.B. 2438], which has passed both houses of the Legislature and will be before you for consideration, was introduced at the request of the State Bar of California as a part of its affirmative legislative program. [¶] The bill would amend Section 137.3 of the Civil Code (enacted in 1951, covering matters formerly in Section 137). [¶] *At present, orders for attorneys' fees and costs in domestic relations cases are made on applications in advance covering future services.* The *primary purpose* of this bill *is to empower the court to make appropriate orders without being restricted to a fixed rule as to time when the application must be made.* Under the bill, if the pleading requests the relief then an application must be made upon order to show cause or motion. The court could base its award upon services rendered or incurred prior as well as subsequent to the application. The Court could upon like application augment or modify the original award, if any. *Similar provisions are made for allowances for services rendered in proceedings after judgment* and such allowances would require an application on order to show cause or motion. [¶] . . . [¶] The amendments will eliminate the necessity for speculation in advance, or the necessity of following the present practice of stipulating that the amounts be fixed at the

time of trial. Sometimes necessary steps are not taken or are overlooked and, under the present provisions, the court must then deny awards on what amount to purely technical grounds. It is believed the new procedure will tend to decrease the volume of orders to show cause which is now substantial and which require[s] considerable time of the courts, parties and counsel. [¶] The bill makes the same procedure applicable to situations in annulment cases where allowances are now authorized by Section 87 of the same code." (Italics added.)

### 4. *The Purpose of the Legislation*

In summary, the State Bar sponsored legislation, passed by both legislative houses and signed by Governor Warren, was *never* presented or represented as concerning services rendered and costs expended on matters which did not grow out of the domestic relations case itself. It corrected the "evils" and hardship of arbitrarily tying payment of legitimate attorney fees and costs to the time of application therefor, thereby precluding the inability of indigent domestic case litigants to obtain payment for necessary past professional services of counsel prior to an order therefor, without a stipulation waiving the prior order. Further, A.B. 2438, in eliminating the antiquated procedure of requiring either a voluntary stipulation for the court's future consideration of payment for past legal services rendered and costs expended, or a prior order for payment therefor, was proposed to decrease the volume of orders to show cause necessitated when adverse counsel refused to so stipulate. The proliferation of multiple orders to show cause for payment of attorney fees and costs generated by the law followed prior to A.B. 2438 obviously wasted considerable time of the courts, parties, and counsel during the pendency of domestic relations litigation.

An additional obvious purpose of A.B. 2438 was to remove fixed time restrictions controlling attorney fees and costs allowances in *all* "domestic relations cases" by creating a statute of uniform application to annulments, divorce, and separate maintenance; and to the support, maintenance, or education of children.

Further, at the time A.B. 2438 was considered and passed by the Legislature, the legal principle had been well established since 1872 that attorney fees were to be paid if specifically provided for by statute or by agreement of the parties. (Code Civ. Proc., § 1021 as amended by Stats. 1933, ch. 744, § 180, p. 1899.) "Except where attorney's fees are specifically allowed by statute, or by contract of the parties, they are not recoverable by a successful litigant as costs or otherwise." (*Murphy* v. *Murphy* (1925) 71 Cal.App. 389, 392 [235 P. 653].)

The State Bar's presentation and analyses of A.B. 2438 to its membership and to Governor Warren were utterly devoid of any expressed intention that the bill's "any proceeding related thereto" language would permit courts in domestic relations cases to award attorney fees in independent actions, coincidentally dealing with issues which might relate to issues arising in dissolution or annulment cases. My research has revealed no case prior to A.B. 2438 that even considered the question of awarding fees and costs, which were generated in independent actions, in domestic relations cases. The bar, in its analysis to Governor Warren, only discussed the word "proceeding" in the context of "proceedings after judgment" in the domestic relations action itself, i.e., *as growing out of that action.*

A.B. 2438, thus, simply altered the California practice of many decades which required advance application or stipulation for future attorney fees in domestic relations cases, or a stipulation obviating the same, to preclude rejection of fee applications for attorney services theretofore performed. It never purported to say what the majority now says it said.

B. *The Flaws in the Majority's Analysis*

Practical considerations and simple common sense, thus, require the rejection of the majority's threadbare claim that "The generality of the statutory [related thereto] language thus leaves a wide area for exercise of the trial court's discretion in determining whether an [independent] action is 'related' to a FLA proceeding." (Maj. opn., *ante,* p. 1496.) The erroneous implication this analysis conveys is that the language of A.B. 2438 as incorporated into section 4370 allows family law courts, with or without proper joinder or an order of consolidation, (as the trial court in this case wrongly concluded it was allowed) to award to a spouse in a family law action the attorney fees incurred in a totally independent and separate action which somehow "relate[s]" to the domestic relationship or property or children of the parties.[5] Such actions are potentially legion.

*All* claims and lawsuits by third parties involving recovery of damages from one or both spouses "relate[]" to their separate and community property, potentially the source of satisfying an adverse judgment with a concomitant loss of financial assets on which support orders may be based. All criminal and juvenile and civil actions involving the parties' minor children or the guardianship of their person or estate or their personal injury recoveries "relate[]" to the custody and support of those children, matters always

---

[5]See *In re Marriage of Siller* (1986) 187 Cal.App.3d 36, 45-47 [231 Cal.Rptr. 757], discussed *infra.*

at issue in the family law action. All suits filed independently of the family law action by either spouse against the other or filed by them or third parties in rem, concerning any property interest of either spouse, "relate[]" to their domestic relationship, financial condition, and property interests.

The majority further rationalizes its holding as follows: "For example, by *authorizing fees in cases related to FLA actions* as well as in those directly under the FLA, section 4370 enables a trial court to ensure that an appropriate degree of financial parity between the parties is not lost by a party's litigation of matters which could have been part of the FLA action in an independent suit." (Maj. opn., *ante*, p. 1497, italics added.)

This reasoning would, of course, allow judges and commissioners in family law cases to award fees incurred by a spouse in separate litigation in which the very court hearing that separate litigation is powerless to award those fees—because no statute or agreement gives it that authority. For example, a husband incurring fees in separately and successfully codefending with his estranged wife an uninsured case against both parties for tortious damage where no fees are allowable to him could potentially use the family law action to collect those fees from the wife, on the majority rationale that he thereby preserved the community from being eroded by a potential judgment creditor and such action is, thus, "related" to the family law action in which the protected community property is to be divided.[6]

The time-consuming conditions and enormous workloads facing family law judges and commissioners today, accelerated by increasingly intricate requirements of the FLA and a concomitant acceleration of the number of those family law litigants who appear in propria persona, are widely known. The ramifications of the potential additional workload the majority dictum would thrust on already overburdened family law judges and commissioners, by means of the rationalization it utilizes in interpreting section 4370, are more than mind boggling and are extremely forbidding. Family law courts should not be required, on the majority's analysis of the "proceeding related thereto" language of section 4370, to adjudicate such extraneous considerations; they should simply continue to exercise their discretion as to awards of attorney fees and costs *controlled by established legal principle (Bluhm* v. *Bluhm* (1954) 129 Cal.App.2d 546, 550 [277 P.2d 421]) in considering only the respective contemporary needs and income and assets of the parties (*In re Marriage of Sullivan* (1984) 37 Cal.3d 762-768 [209 Cal.Rptr. 354, 691

---

[6]A flood of litigation is conceivable on such issues as whether section 5122 (married persons are not liable for the damage caused by the other spouse unless liable if the marriage did not exist) is a bar to seeking fees in the example above posed.

P.2d 1020]). The State Bar did not propose, and the Legislature did not enact, A.B. 2438 for the purposes suggested by the majority. The purpose of A.B. 2438 was quite different from the one the majority ascribes to it, and "it is a well-established legal principle that the purpose of a statute is a guiding star in defining the language it employs . . . ." (*Sierra Club* v. *City of Hayward* (1981) 28 Cal.3d 840, 860 [171 Cal.Rptr. 619, 623 P.2d 180], fn. 12.)

## C. *Relevant Case Law*

The better reasoned cases have, albeit without analysis of statutory history, rejected any proposal to utilize the language of section 4370 as a basis of conferring upon family law judges and commissioners the power to make awards of attorney fees in family law actions for services in cases where the court hearing them was prohibited from doing so. The cases construing section 4370 and former sections 137 and 137.3 do not support the analysis and reasoning of the majority.

For instance, *In re Marriage of Newport* (1984) 154 Cal.App.3d 915, 920 [201 Cal.Rptr. 647] correctly defines the parameters of section 4370 when it cites *In re Marriage of Coleman* (1972) 26 Cal.App.3d 56, 60 [102 Cal.Rptr. 629]: "The phrase 'during the pendency,' used in section 137 and its successors, sections 137.3 and 4370,[7] has since been expanded to include 'many [of the] diverse proceedings *growing out of the divorce action* and arising after the entry of the final decree.' "

This principle, that attorney fees are to be allowed in those proceedings which "grow[] out of" the divorce proceeding, stems from the decision in *Lerner* v. *Superior Court* (1952) 38 Cal.2d 676 [242 P.2d 321]. *Lerner* found that a writ of prohibition arising out of a custody dispute, which in turn grew out of the terms of a final divorce decree entered two years previously, was a proper subject for an attorney fee award as a proceeding growing out of the underlying divorce action. (Pp. 685-687.) Observing that then-section 137.3 (prior to its amendment) was a recodification of the first sentence of former section 137, the Supreme Court said: "It was settled under section 137 that the phrase therein, 'when an action for divorce is pending,' embraced many diverse proceedings *growing out of the divorce action* and arising after entry of the final decree." (*Id.* at p. 685, italics added.) The court cited as illustrative cases those dealing with modification of the allowance for child support,

---

[7]The phrase "[d]uring the pendency of any action," with which A.B. 2438 began former section 137.3, now reads in section 4370: "[d]uring the pendency of any proceeding under this part [the FLA] . . . ." This change in language does not change the analysis of these cases—that "pendency" includes proceedings growing out of the family law action.

modification of alimony, proceedings to enforce distribution of community property, motions to set aside the final decree, construction of the property settlement agreement, mandamus to compel entry of a judgment for delinquent alimony. (*Ibid.*) *Lerner* found no bar under section 137.3 to an award of attorney fees to wife, who was compelled to seek a writ of prohibition to prevent improper modification of a custody award in the divorce action, i.e., in proceedings which *grew out of the divorce action.*

Where the action does not grow out of the divorce, fees under section 137.3 are properly denied. Thus, in *Hendrix* v. *Hendrix* (1955) 130 Cal.App.2d 379 [279 P.2d 58], the court rejected a broader interpretation of the attorney fees provision. In *Hendrix*, the parties had been divorced in Washington State; and there was no California dissolution proceeding. When a later dispute was pursued in the California courts concerning the wife's alleged kidnapping of some of the children, the trial court denied a motion for attorney fees in such an action: "It is not one of the actions specified in sections 137.3 and 137.5 of the Civil Code in which attorney's fees are allowed. Since there is no statutory provision for the allowance of attorney's fees in the present action, the mode of compensation is left to the agreement, express or implied, of the parties." (*Id.* at p. 383.)

A few years later, the Second District also rejected a broad interpretation of the "relating thereto" language in *Gottlieb* v. *Gottlieb* (1957) 155 Cal.App.2d 715 [318 P.2d 763]. There, the former wife had caused the sheriff to execute against and acquire possession of her former husband's car, alleging he was delinquent in making support payments under the dissolution decree. The husband brought an action for abuse of process, claiming he had been current on payments and his former wife acted maliciously. The trial court denied the former wife's application for an award of attorney fees under the "relating thereto" language of then-section 137.3. The Second District affirmed: "The action for malicious abuse of process is in tort—the alleged tort of the former wife. . . . Manifestly, the action for malicious abuse of process is not related to *nor does it grow out of the divorce action.* It is based solely on the alleged tortious conduct of the former wife." (*Id.* at p. 719, italics added.)

In *Brink* v. *Brink* (1984) 155 Cal.App.3d 218, 222 [202 Cal.Rptr. 57], this district (Div. Five) pointed out that section 4351 of the FLA (of which § 4370 is a part) confers jurisdiction under section 4800 to divide community property in " 'proceedings under this part' (that is, in proceedings under

the [FLA])," and that wife's independent equitable action to set aside the judgment of dissolution was not a FLA proceeding.[8]

The *Brink* court affirmed the trial court's denial of the attorney fees wife sought in her lawsuit, claiming authority therefor under section 4370: "[T]he trial court lacked any authority to award attorneys' fees, since the action was not pursued under the [FLA] and no other statute or contractual agreement provided for recovery of attorneys' fees." (155 Cal.App.3d at p. 223.)[9]

---

[8]Section 137.3 became section 4370 by means of the 1970 enactment of the FLA. (Stats. 1970, ch. 311, § 1, p. 705.) This recodification was not intended to effect any substantive change to the pre-1970 line of cases which defined "proceeding[s] relating thereto" in this context: "This act does not constitute a change in, but is declaratory of, the existing law." (*Id.,* § 15, p. 706.)

[9]In *Green* v. *Uccelli* (1989) 207 Cal.App.3d 1112, 1122-1123 [255 Cal.Rptr. 315], the same court held that the wife's attorney could not be sued in a separate action for malicious prosecution, after the attorney sought and then withdrew an order to show cause re contempt in the dissolution action. Husband's remedy was to seek attorney fees in the dissolution action under section 4370.5. The trial court could award attorney fees under sections 4370 and 4370.5. A later case, *In re Marriage of Green* (1989) 213 Cal.App.3d 14, 28, footnote 8 [255 Cal.Rptr. 315], suggested in dicta that the lawsuit in issue in *Green* v. *Uccelli,* and other lawsuits, might justify an award of fees under section 4370 since they were "related in some fashion to the dissolution proceeding." Thus, a suggestion was simply made in dicta that if an issue was or should have been litigated in the dissolution proceeding, an award of fees under section 4370 might be proper.

To the same effect is *Guardianship of Paduano* (1989) 215 Cal.App.3d 346, 351-352 [263 Cal.Rptr. 589], which affirmed an award of fees under section 4370 where a guardianship proceeding was consolidated with a FLA dissolution proceeding, since the issue in the consolidated proceedings was the same: Who should receive physical custody of the minors. Since the proceedings had been properly consolidated, section 4370 applied; and the same issues would have been litigated in any event in the dissolution action. Here, by contrast, the dependency action was never consolidated with any pending dissolution proceeding; further, the issues litigated in the dependency action brought by the county concerned whether both parents were unfit due to child abuse, not the simple question of physical custody which had already been decided in prior dissolution proceedings. We, therefore, need not and do not decide whether the dicta in *Marriage of Green* and *Paduano* was well considered.

*Paduano,* in allowing fees in the family law case arising out of the consolidated guardianship proceeding concerning child custody (an action *not* brought under the FLA), on the rationale the issues were interlinked in the consolidated cases, seems difficult to rationalize in light of the statutory history of section 4370, *Brink, supra,* and the cases restricting attorney fees to proceedings "growing out of" the family law action. Like other cases considering section 4370, *Paduano* has not analyzed the legislative history and intent concerning the "proceeding related thereto" language of that section and its predecessor statutes. *Paduano* appears to adopt the coincidental linkage of issues of child custody, existing in a separate guardianship action and a family law action, as a rationale for allowing fees under section 4370 against the unsuccessful petitioner in the guardianship, rather than analyzing whether fees were allowable because the guardianship action was joined with the family law action as in *In re Marriage of Siller, supra,* 187 Cal.App.3d at pages 45-47, or "[grew] out of" the family law action. It seems obvious the aunt's guardianship petition did not grow out of the family law action. She, like the county in our case, sought by an independent action to obtain custody of the child from both its parents, parties to the family law action. Neither parent

D. *Section 4370 Does Not Allow an Award of Fees in Independent Actions*

Finally, it should be noted that section 4370 of the same FLA, aside from other considerations of legislative history, includes the language "[d]uring the pendency of any proceeding under *this part* [the FLA] . . . ." The reasonable and analogous implication is that the "proceeding related thereto" language of section 4370 means related proceedings *under the FLA*, not those of some independent action.

The Legislature has certainly shown itself willing to amend section 4370 in light of experience. (See *In re Marriage of Reyes* (1979) 97 Cal.App.3d 876, 879 [159 Cal.Rptr. 84] [An award of fees under a prior version of section 4370 may be made only against marital partners.]; *In re Marriage of Siller, supra,* 187 Cal.App.3d at pp. 44-47 [Under the 1981 amendment to section 4370, an award of fees may be made against certain third parties. The family law court acquired subject matter jurisdiction over those third parties (a partnership and corporation in which husband held interests) by wife's complaint in joinder alleging they held and claimed property in which she had a community property interest.[10]].) However, if section 4370 is to be amended to accomplish the exceptional result envisioned by the majority, "it is the task of the Legislature and not the courts to create that exception." (*Droeger* v. *Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 41 [283 Cal.Rptr. 584, 812 P.2d 931] [analyzing the legislative history of analogous attorney fees provisions of the FLA].)

The Legislature has not provided, by amendment or otherwise, for the award in family law cases of fees and costs which a party thereto incurs in

---

could have recovered fees from the petitioner in the guardianship action. It is difficult to see how fees could nonetheless be awarded under section 4370 in the family law case, with which the guardianship was consolidated for trial, simply because each case coincidentally dealt with the issue of custody of a child. *Neither Paduano nor the case at bench* presents the situation where the exact issue to be litigated between the parties in a family law action is the subject of an independent consolidated action between those same parties. (See *Crook* v. *Crook* (1960) 184 Cal.App.2d 745, 747, 749 [7 Cal.Rptr. 892].) In such cases, attorney fees are properly awarded in the consolidated action because the independent action simply mirrors, as *between the same parties,* the same issue and claim for relief they will try in their family law action. *Paduano,* however, rationalizes its holding on an alternative theory: The family law court has continuing exclusive jurisdiction over custody awards of minors and, thus, may award fees in a consolidated proceeding where third parties seek letters of guardianship and custody of the minor whose custody is at issue in the family law action.

[10]This case is predicated on the amendment in 1981 of section 4370 by the following emphasized language: "During the pendency of any proceeding under this part, the court may order *any party, except a governmental entity,* to pay . . . attorney's fees . . . ." (Stats. 1981, ch. 715, § 1, p. 2816.)

independent unconsolidated actions, coincidentally dealing with issues relating to or duplicating issues in the family law action.

Until the Legislature so acts, I would reverse the judgment on the sole ground that the juvenile proceedings in which wife seeks attorney fees did not grow out of the family law action and, hence, are neither a "proceeding related []to" a pending family law action nor a "subsequent proceeding" (following entry of judgment) therein within the meaning of section 4370. The lower court was, accordingly, without jurisdiction in the family law action to award wife fees she expended for legal services in those juvenile proceedings.[11]

Respondent's petition for review by the Supreme Court was denied March 26, 1992.

---

[11]In trying to hastily sweep under the rug all the relevant evidence as to the purpose of the statute (maj. opn., *ante*, p. 1494, fn. 4), the majority opinion misses the main point: There is absolutely *no* evidence the Legislature even contemplated, much less endorsed, the bizarre gloss which the majority opinion foists upon a statute which was narrowly crafted to achieve a particular purpose stated by the State Bar—which sponsored the legislation and shepherded it through to the Governor's desk. Moreover, despite the majority opinion's strange reliance on two unsigned student notes criticizing *Sales* v. *Stewart, supra*, 134 Cal.App. 661, that case has never been criticized or overruled by any court; and its holding that the purpose of a statute is the key to its interpretation is obviously correct. (*Id.* at p. 664.) "[T]he objective sought to be achieved by a statute as well as the evil to be prevented is of prime consideration in its interpretation." (*Western Oil & Gas Assn.* v. *Monterey Bay Unified Air Pollution Control Dist.* (1989) 49 Cal.3d 408, 426 [261 Cal.Rptr. 384, 777 P.2d 157], internal quotation marks omitted; accord, *In re Marriage of Morrison* (1978) 20 Cal.3d 437, 447, fn. 6 [143 Cal.Rptr. 139, 573 P.2d 41] [explicitly relying upon a letter of transmittal to the Governor in interpreting another amendment to the FLA]; *Roland Co.* v. *Walling* (1946) 326 U.S. 657, 671 [90 L.Ed. 383, 391, 66 S.Ct. 413] ["[T]he Bill did not depart substantially from its original purpose. This purpose remains the key to the meaning of the words . . . ."]; 2A Sutherland on Statutory Construction (4th ed. 1984) Extrinsic Aids—Legislative History, § 48.11, pp. 322-323 ["Statements by other unofficial [sponsoring] groups and individuals occasionally have been admitted as interpretive aids. [Citing numerous cases including *Sales* v. *Stewart, supra*.] The statements are valuable only if the group or individual has sponsored the legislation and led it through the legislative process."].) Indeed, Presiding Justice Kline recently relied, correctly, on such aids in ascertaining the purpose of a statute. (*American Tobacco Co.* v. *Superior Court, supra*, 208 Cal.App.3d at pp. 485-486.) We should do the same here.