Filed 4/19/16  Sweeney v. Evilsizor CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JOSEPH SWEENEY,<br><br>        Defendant and Appellant,<br><br>v.<br><br>KERI EVILSIZOR,<br><br>        Plaintiff and Respondent;<br><br>JOHN EVILSIZOR et al.,<br><br>        Objectors and Respondents. | A144781<br><br>(Contra Costa County<br>Super. Ct. No. MSD1301648) |

Appellant Joseph Sweeney appeals from a trial court order denying requests for attorney fees projected to be incurred in a then-pending appeal and already incurred in a civil lawsuit involving his former spouse, respondent Keri Evilsizor, and her parents, respondents John and Mary Evilsizor.[1]  We affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

This is the fourth appeal we have considered in this dissolution proceeding. Joseph and Keri were married in November 2010 and had one child, a daughter, in November 2012.  They separated months later, and dissolution proceedings were initiated

---

[1] Because three of the parties in this opinion share a surname, we refer to all parties by their first names in the interest of clarity.

1

shortly thereafter. Keri's parents were later added as parties because assets under their control could be subject to disposition by the court.

The trial court has characterized this as a "highly contentious case." The disputes have continued on appeal, with all parties appealing adverse rulings at one point or another, and this court declining to set aside any of those rulings. In *Evilsizor v. Sweeney* (2014) 230 Cal.App.4th 1304 (*Evilsizor I*), we affirmed a sanctions award against Keri's father for failing to promptly withdraw a motion to quash a subpoena. In *In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416 (*Evilsizor II*), we affirmed a restraining order against Joseph to prevent him from disseminating information he had surreptitiously downloaded from Keri's mobile phones. This appeal is the second appeal involving disputes about Joseph's entitlement to attorney fees.

Early in the proceedings, in July 2013, the trial court ordered Keri to pay Joseph $10,000 for attorney fees. Keri initially paid half of that amount, but she resisted paying the rest.

Soon after the trial court issued the $10,000 award, Keri's parents sued Joseph and Keri in a separate lawsuit, civil action C13-01866 (hereafter "the civil lawsuit"), for fraud and breach of contract in connection with loans the parents allegedly extended to Joseph and Keri. Keri quickly agreed to a settlement of that case, but the trial court enjoined her from executing the settlement, joined the case with the dissolution proceedings, and stayed the case during the pendency of the dissolution proceedings.

In January 2014, Joseph filed a motion for attorney fees and costs, which we will refer to as his "first fees request." In it, he sought $131,918.73 in fees (and $870 in costs) from Keri's parents and $22,917.50 in fees (and costs of a pending custody evaluation) from Keri. He also sought $26,664.15 for fees he allegedly incurred in the civil lawsuit. In support of the motion, he submitted approximately 150 pages of evidence and argument, including evidence and argument about his, Keri's, and Keri's parents' financial positions, and evidence about the amount of attorney fees he incurred in the civil lawsuit. Keri and her parents opposed the motion with their own extensive evidence and argument.

2

A hearing was held in June 2014 to consider various pending matters, including Joseph's first fees request. On the day of the hearing, Keri apparently paid the remaining $5,000 owed to Joseph under the July 2013 order, and she was ordered to pay him $5,000 more. Thus, as of June 2014, Keri had been ordered to pay a total of $15,000 to Joseph for attorney fees. At the conclusion of the hearing, the court ordered additional financial information from Keri and Keri's parents and continued the hearing to the following month.

After hearing arguments at the continued hearing on July 25, 2014, the trial court found that Joseph lacked substantial assets and that Keri appeared to be receiving assistance from her parents to pay litigation expenses. Based on these findings, the court awarded Joseph a total of $125,000 in additional attorney fees, but it denied his request for $26,664.15 to pay for fees he allegedly incurred in the civil lawsuit. The court stated, "[W]ith respect to the amounts . . . that [Joseph] asked for amounts from the civil action while it was separate, . . . I don't think he can get that in this case."

The $125,000 fees award was composed of $75,000 for fees already incurred (of this amount $60,000 was to be paid by Keri and $15,000 was to be paid by her parents) and $50,000 for Joseph's anticipated future fees (of this amount $40,000 was to be paid by Keri and $10,000 was to be paid by her parents). The award was expressly made "subject to reallocation at the time of trial." The court stated that "given everything I'm hearing, it's possible that ultimately some of the facts will not turn out to be as they look at this moment, so I'm completely reserving all reallocation issues to time of trial. If it turns out that what it appears to be the case today is, in fact, not at all the case, then we will make the appropriate adjustment."

Keri and her parents appealed from the $125,000 fees award but Joseph did not. We recently affirmed the award in that appeal.[2] (*Evilsizor v. Sweeney* (Mar. 22, 2016, A143054) [nonpub. opn.] (*Evilsizor III*).)

In December 2014, while *Evilsizor III* was pending, and only four-and-a-half months after obtaining the $125,000 fees award, Joseph filed another motion for attorney fees, which we shall refer to as his "second fees request." In it, he sought $12,600 ($4,200 from Keri and $8,400 from her parents) for fees he expected to incur in *Evilsizor III* and $3,600 (from Keri) for fees he expected to incur in the same appeal regarding the trial court's denial of Keri's request to change the daughter's surname. He also repeated his request for attorney fees incurred in the civil lawsuit, this time requesting slightly more ($28,589). The motion was denied following a hearing on January 22, 2015,[3] and this appeal followed.

## II.
### DISCUSSION

1. The Standard of Review

"A motion for attorney fees is left to the trial court's sound discretion and will not be disturbed on appeal absent a clear showing of abuse," that is, " ' "only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order made." ' " (*In re Marriage of Bendetti* (2013) 214 Cal.App.4th 863, 868-869.)

---

[2] In their brief, respondents ask that the court take judicial notice "of the Appeal in Appeal Number: A1143054 [*sic*]." To obtain judicial notice by a reviewing court, a party *must* file a separate motion. (Cal. Rules of Court, rule 8.252(a)(1); Ct. App., First Dist., Local Rules of Ct., rule 9(a), Judicial Notice Requests.) Notwithstanding respondents' noncompliance with the rules, the court nonetheless takes judicial notice of the record and opinion in No. A143054 given their relevance to the current appeal. In that appeal, we also rejected Keri's appeal of an order denying a request to change the surname of her and Joseph's daughter.

[3] At the January 2015 hearing, the parties accepted, and the trial court approved, a stipulation under which Joseph received an additional $4,000 in attorney fees to enable him to be represented at an upcoming settlement conference.

Furthermore, a trial court's order is presumed to be correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557.) "[I]t is settled that: 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown [by the appellant]. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Id.* at p. 564.) "The burden of affirmatively demonstrating error is on the appellant." (*Fundamental Investment etc. Realty Fund v. Gradow* (1994) 28 Cal.App.4th 966, 971.)

2. The Family Code Authorizes Trial Courts to Allocate Between Parties in Dissolution Proceedings Attorney Fees Actually or Projected to Be Incurred.

Under Family Code, section 2030,[4] a trial court in a dissolution proceeding "shall ensure that each party has access to legal representation . . . by ordering, if necessary based on the income and needs assessments, one party . . . to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding." In determining whether such an order is appropriate, the trial court must determine whether the award and its amount "are just and reasonable under the relative circumstances of the respective parties." (§ 2032, subd. (a).) It must therefore consider "the parties' respective needs and incomes, including their assets and liabilities." (*In re Marriage of Bendetti*, *supra*, 214 Cal.App.4th at p. 868.) The court must take into consideration several factors, including those that "the court determines are just and equitable." (§ 4320, subd. (n); see § 2032, subd. (b).) And it may award attorney fees payable by unrelated third parties who have been joined in the dissolution action. (*Marriage of Bendetti*, at p. 869; *In re Marriage of Siller* (1986) 187 Cal.App.3d 36, 40; § 2030, subd. (d).)

"The public policy purpose behind sections 2030 and 2032 is ' "leveling the playing field" and permitting the lower-earning spouse to pay counsel and experts to

---

[4] All statutory references are to the Family Code unless otherwise specified.

litigate the issues in the same manner as the spouse with higher earnings." [Citation.]

 . . . A spouse should not have to utilize support payments designed to pay living expenses to fund litigation in the dissolution proceeding. [Citation.]" (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1315-1316.)

A request by a party in a dissolution proceeding for an award of fees that have not yet been, but are expected to be incurred, is referred to as a request for "pendente lite" fees.[5] These requests are common in dissolution proceedings, and a trial court abuses its discretion if it denies such a request without considering the needs of the party making the request and the ability to pay of the party from whom the request is made. (*In re Marriage of Hatch* (1985) 169 Cal.App.3d 1213, 1215-1216.) Thus, the court must consider the parties' financial positions when it decides whether to award pendente lite fees. But it may also consider other factors, such as the complexity of the issues, the costs already and expected to be incurred, and the parties' trial tactics. (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 975; *In re Marriage of O'Connor* (1997) 59 Cal.App.4th 877, 884.)[6]

      3.      The Trial Court Did Not Abuse Its Discretion in Denying Joseph's Second Request for Pendente Lite Fees.

As we have mentioned, the $125,000 fees award granted in July 2014 as a result of Joseph's first fees request included $50,000 in pendente lite fees. The question presented here is whether Joseph has satisfied his burden of showing that the trial court abused its discretion—i.e., that no reasonable judge could have reached the same conclusion—when it denied his second request for additional pendente lite fees brought four-and-a-half months after the July 2014 award. We conclude he has not.

---

[5] "Pendente lite" is a Latin phrase meaning "while the action is pending." (Garner, Dict. of Modern Legal Usage (3d ed. 2011) p. 665.)

[6] Respondents argue that we must affirm the denial of Joseph's request for additional pendente lite fees because the award was sought "before [the fees] were actually litigated" and because Joseph ended up representing himself in the appeal. These arguments miss the point of pendente lite fees, which is to enable a party that lacks resources to obtain representation for *future* anticipated litigation.

As we explained in *Evilsizor III*, before ruling on Joseph's first fees request, the trial court had received extensive financial information from the parties and had considered the appropriate factors, including Joseph's needs and the ability of the other parties to pay. Regarding Joseph's needs, the trial court found that Joseph lacked substantial assets. It stated, "I don't see that [Joseph] has substantial assets that actually could be used at this point." Regarding the ability of Keri's parents' to pay fees, the court stated that, while "any participation by [the parents] on attorney's fees has to be limited to the issues which their participation is relevant," "I have looked at their 2012 tax return . . . and looking at that, as well as the [income and expense statement], that they have assets and income that are available to them to pay fees." Regarding Keri's ability to pay fees, the court explained, "She had a very high income until she was ordered to pay [Joseph] support out of that income, and then suddenly she was terminated [by her parents]. . . . And her parents seemed to be willing to continue to fund for litigation. So I think one way or another she has access to money to pay attorneys."

In affirming the $125,000 fees award, we concluded that the trial court properly exercised its discretion in ordering Keri's parents to pay both a portion of Joseph's fees already incurred and a portion of his pendente lite fees. (*Evilsizor III*, *supra*, A143054.) Far from disagreeing with that conclusion, Joseph argued for it. And in his brief in this appeal, he continues to emphasize the importance of the evidence presented to and relied on by the trial court when it granted the $125,000 fees award.

Joseph's contention that the trial court abused its discretion in denying his second request for more pendente lite fees is hard to reconcile with his prior positions. His argument is that, although the trial court correctly understood and applied the relevant factors in granting his first fees request, it abused its discretion by misunderstanding or misapplying these factors in denying his second fees request submitted months later. We are not persuaded by this argument, and we find no support in the record for it. There is simply no basis for us to conclude that the court was unaware of the evidence and arguments it had considered in connection with the first fees request when it considered the additional evidence and argument submitted in support of the second fees request. To

7

the contrary, the record shows that the court thoughtfully considered the evidence and relevant factors. And in a ruling that we think only underscores the reasonableness of its ruling, the trial court expressly acknowledged its authority to reallocate fees later in the litigation.

A challenge similar to the one Joseph makes here was considered and rejected in *In re Marriage of O'Connor*, *supra*, 59 Cal. App.4th at pages 883-884. In that case, the appellate court concluded that "[t]he trial court was eminently well qualified to rule on husband's request for additional attorney's fees and costs, having previously ruled on several motions brought by wife for summary adjudication of issues, and having at three separate hearings considered the parties' extensive factual arguments on their cross-motions for attorney's fees as sanctions. . . . With this background, the court's decision-making process followed section 2032 to the letter. The court considered the complexity of the issues involved in the litigation, the wealth and available resources of the parties, and the litigation costs already incurred and expected to be incurred through trial. In addition, the court acknowledged that an award of pendente lite fees was subject to revision in the future."

As the trial court in *O'Connor* exercised proper discretion, so did the trial court here.

4.    Joseph's Second Request for Fees Incurred in the Civil Lawsuit Was Properly Denied.

In his second fees request, Joseph again sought from Keri's parents the attorney fees he incurred in the civil lawsuit, which was brought by Keri's parents against both Joseph and Keri in connection with loans the parents allegedly extended to Joseph and Keri. The civil lawsuit was eventually stayed pending resolution of the dissolution proceedings, but Joseph alleged that he incurred $28,589 in attorney fees before the stay was imposed. On appeal, he argues that the trial court was required as a matter of law to have awarded him those fees. He is mistaken.

Section 2030 allows for awards of attorneys fees to be augmented or modified "as may be reasonably necessary for the prosecution or defense of the [dissolution]

8

proceeding, *or any proceeding related thereto . . . .*" (§ 2030, subd. (c), italics added.) This language authorizes a trial court in a dissolution proceeding, under appropriate circumstances, to award to a spouse attorney fees incurred in certain related independent civil actions.[7] (*In re Marriage of Seaman & Menjou* (1991) 1 Cal.App.4th 1489, 1497; *In re Marriage of Green* (1992) 6 Cal.App.4th 584, 590-591.) The court may even, again under appropriate circumstances, require a non-spouse who is a party in the related action to pay the fees. (*In re Marriage of Siller*, *supra*, 187 Cal.App.3d at p. 42.) The court's authority under section 2030 to award fees incurred in separate action turns on whether that action is sufficiently related and whether the award will serve the purpose of section 2030, which is to provide a spouse with funds adequate to properly litigate the dissolution action in light of the spouses' respective financial positions. (*In re Marriage of Seaman & Menjou*, *supra*, 1 Cal.App.4th at pp. 1496-1497.)

None of these general principles mean that the trial court here was authorized, much less required, to order Keri's parents to pay Joseph the fees he incurred in the civil lawsuit. To begin with, the civil lawsuit has not been found by the trial court to be "related" within the meaning of section 2030. "[T]here are limits as a matter of law as to whether another action is 'related' to a [dissolution proceeding] within the meaning of [section 2030]. Simply because divorcing spouses are parties to another action does not automatically mean it is statutorily 'related.' For example, a collection action brought against the spouses by an unpaid creditor would normally not be 'related' to the dissolution action, even though the obligation is a community obligation. On the other hand, an action filed by one spouse against the other for the purpose of harassment or intimidation is clearly related to the dissolution action within the meaning of [section 2030]." (*In re Marriage of Green*, *supra*, 6 Cal.App.4th at pp. 591-592, fn. 7.)

---

[7] Section 2030 was enacted in its current form in 2005. The pre-2005 version of section 2030 was section 4370. Although section 2030 is worded slightly differently from its predecessor, they have been interpreted to have the same effect. (*Burkle v. Burkle* (2006) 144 Cal.App.4th 387, 401.)

"Normally, whether another action is 'related' to the marital case within the meaning of section [2030] is a factual question for determination by the trial court." (*Id.* at p. 591.)

Here, while there is nothing to prevent the trial court from considering such a finding in the future, the court has not found that the civil lawsuit is related to the dissolution action for purposes of section 2030. The civil lawsuit may be a legitimate claim by Keri's parents, in which case it would not be related, or it may have been filed in collusion with Keri for the purpose of harassing or intimidating Joseph, in which case it would be related. Until and unless the court finds that the civil lawsuit is related for purposes of section 2030, it lacks authority to award Joseph the fees he has incurred in that action.

Our ruling at this juncture does not necessarily end the matter. In subsequent proceedings, whether in connection with interim fees requests or at the conclusion of the dissolution proceeding,[8] the trial court may award Joseph attorney fees incurred in the civil lawsuit if it finds that the civil lawsuit is related within the meaning of section 2030 and the award is necessary to provide Joseph with funds adequate to properly litigate the dissolution action in light of the spouses' respective financial positions and other relevant factors. (*In re Marriage of Seaman & Menjou*, *supra*, 1 Cal.App.4th at pp. 1496-1497.) The court may also deny those fees if it finds that the civil lawsuit is unrelated or the award is unnecessary to provide Joseph with funds adequate to properly litigate the dissolution action.

---

[8] Trial court orders regarding "fee requests in conjunction with interim motions, without more, cannot preclude the court from exercising its responsibility on this issue at the end of the case. Trial courts have a duty to award appropriate attorney fees and costs pendente lite pursuant to [section 2030]. [Citation.] However, trial courts also have a duty at the conclusion of the case to make a just and reasonable award of attorney fees and costs, considering the circumstances of the parties." (*In re Marriage of Green*, *supra*, 6 Cal. App.4th p. 593.)

5. Joseph's Constitutional and Statutory Rights Were Not Violated at the January 2015 Hearing.

Joseph also argues that the trial court violated his due process and statutory rights at the January 2015 hearing. He claims that the court violated his rights by failing to recognize that Keri's parents essentially "conceded [his] motion" by not opposing it in writing, "hastily" ending the hearing without giving him an opportunity to rebut the argument of Keri's counsel, and failing to make findings as required under section 2030.

None of these arguments have merit. To begin with, Keri's parents did *not* concede the second fees request; they expressly opposed it at the hearing. In any event, we are aware of no authority that required the trial court to rule in Joseph's favor simply because Keri's parents did not file a written opposition.

Joseph was also given sufficient opportunity to argue his points. He filed extensive evidence and argument, and he recognized at the hearing "the extent of what I have to say is mostly in my papers." He was permitted to make an oral presentation, and contrary to his contentions, he was given an opportunity, which he exercised, to give a brief rebuttal. While the hearing may have been shorter than Joseph preferred, and while Joseph may have wanted to make additional points, the trial court could reasonably have determined that there was no need for prolonged argument given its familiarity with the issues. Nothing in the record supports the conclusion that the trial court violated Joseph's rights or abused its discretion in the way in which it conducted the hearing.

Joseph's argument also fails that the trial court did not make findings. The argument is inaccurate, and it was forfeited. It is inaccurate because the court *did* make findings. While it is true that the findings entered after the January 2015 hearing were abbreviated, these findings were made in the context of the extensive findings made six months earlier in connection with the first fees request. And the argument was forfeited because Joseph never asked the trial court for additional findings, and he raises the argument for the first time on appeal. Absent extenuating circumstances, we do not consider procedural defects or erroneous rulings where an objection could have been, but

11

was not, presented to the trial court.  (*In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, 1002.)

## III.
### DISPOSITION

The trial court's February 13, 2015, order denying Joseph Sweeney's second fees request is affirmed.  Respondents shall recover their costs on appeal.


_____
Humes, P.J.


We concur:


_____
Dondero, J.


_____
Banke, J.